SAMUEL G. STALUTH, Appellant, v. AMERICAN GUARANTY COMPANY OF · CHICAGO, Respondent.

**St. Louis Court of Appeals, November 28, 1899.**

1. **Guaranty Company:** PAID - UP CONTRACT: SUIT ON: INTERPRETATION THEREOF. The interpretation of a contract is for the court, and when its language and terms are plain and definite, the rights and duties of the parties thereto, in the absence of fraud, must be governed by it, for the court has no power to substitute for the parties another contract, which it might consider more equitable in its nature.

2. ———: ———: ———: ———: DISCOUNT. The original contract provided for ascertaining the cash value of a paid-up contract in this language: "Such cash value shall consist of the principal sum of such paid-up contract, less a discount of five per cent per annum for the unexpired term." This must be the rule, and interpreted, is the lessening of the principal sum mentioned in the contract, to wit, $210 by five per cent for seventeen years, the unexpired term, which fixes the present cash value of the paid-up contract at $31.50, the amount found by the lower court.

Appeal from the St. Louis City Circuit Court.—*Hon. Franklin Ferris,* Judge.

AFFIRMED.

*McCorkle & Haberman* for appellant.

(1) The language and terms of the contract will be understood in their ordinary sense; but where they relate to some particular trade or calling, their technical meaning will be given them. Bradshaw v. Bradbury, 64 Mo. 334; Eaton v. Smith, 20 Pick. 150; Findley v. Findley, 11 Grat. 434; Rindskoff v. Barrett, 14 Ia. 101; Robinson v. Fiske, 25 Me. 401; Hanna v. South St. J. Land Co., 126 Mo. 11. (2) If the terms used in a contract admit of two meanings, one of

which would be unlawful and the other lawful, the latter must be adopted. Crittenden v. French, 21 Ill. 598; State v. Boatmen's Savings Inst., 48 Mo. 189. (3) The interpretation which will make the contract most reasonable will be followed. Myers v. Gross, 59 Ill. 436; Bickford v. Cooper, 41 Pa. St. 142; Royalton v. Royalton, 14 Vt. 311. (4) The "paid-up contract" contemplated by the original agreement in issue is essentially a non-negotiable promissory note, due in 1915. To obtain this, plaintiff was invited by defendant to advance to it money, promising him that it would discount his paid-up contract for him whenever he should so elect. (5) This paid-up contract, since it is a non-negotiable instrument with a long period to run, must be discounted by "true discount," and the law will not permit the rule of "bank discount" or "short-time discount" to be used, since the latter is only permitted in cases of (a) negotiable instruments; (b) payable at no distant day, and (c) that will circulate readily in the course of trade. And the right to use bank discount at all, only exists by custom of banks and mercantile usage, which has no relation to, or connection with, or traffic in, such long-time obligations as the one involved in this suit. Ins. Co. v. Ely, 2 Cowen, 703; Hogan v. Healy, 22 Ark. 413; Ins. Co. v. Carpenter, 40 Ohio St. 266.

*L. Frank Ollofy* for respondent.

(1) The word "discount" as used in the contract is to be taken in its common acceptation, viz., "to deduct," "to reckon off," "to count off." It does not mean discount in finance, "bank discount" or "true discount" which are technical terms applicable to the banking business. Webster's International Dictionary, 1891, word "discount;" Century Dictionary, part VI, word "discount;" Standard Dictionary, 1897, p. 523, word "discount." (2) To "discount," in banking, is to take interest in advance, and is a mode of loaning

money.    As there is "no loan of money" in issue in the case at bar the word "discount" can not be construed to mean the technical terms " true discount," "bank discount" or discount in finance.    Weckler v. Bank, 42 Md. 592; Fleckner v. Bank, 8 Wheat. (U. S.) 350; 9 Am. and Eng. Ency. of Law, p. 468. (3)    To constitute "usury" there must be an express or implied loan.    Usury involves "interest" upon money.    The charge of usury is inapplicable to the facts of this case, for here we have neither a case of "loan" nor a case of "interest" but a contract which *ex vi termini* excludes both.    State ex rel. v. Boatmen's Savings, 48 Mo. 189; Dunkle v. Renick, 6 Ohio St. 535.    (4)    The defendant accepted the paid-up contract with full knowledge of its terms and therefore can not recover.

## STATEMENT OF THE CASE.

BOND, J.—The defendant is an Illinois corporation doing business in Chicago, Illinois, under a form of contract, whereby it agrees to pay to one, whose application accompanied by $6 cash is accepted and who shall thereafter pay $6 per month for twenty years, at the end of that period the sum of $1,400—with a further obligation to pay to said applicant, or disburse at his request, $30 per year as long as he keeps up such payments, and with a further stipulation that in the case of the failure of the applicant after one year to make such monthly payments, he shall have the right to demand a paid-up contract obligating the corporation to pay him at the end of the unexpired portion of the term of twenty years, that proportion of $1,400 which the number of years such payments were continued bears to twenty years, or the entire term.    The contract provides for the exchange at any time of a paid-up contract so taken out for its cash value, determinable according to a method prescribed therein.    Under a contract such as this, plaintiff made a cash payment and

monthly payments thereafter for three years.    He thereupon
demanded a paid-up contract, which was issued to him for
$210, payable seventeen years after date.    Plaintiff demanded
the exchange value of this contract at a specified sum.    De-
fendant offered to give therefor a lesser sum; each contended
that the sum claimed was that authorized under the original
contract.    Plaintiff sued for the amount claimed by him.
Defendant tendered the amount submitted to be due.    There
was a trial before a justice, and an appeal to the circuit court,
where the cause was submitted to the court without a jury, and
a finding and judgment rendered in favor of defendant, from
which this appeal was taken.

## OPINION OF THE COURT.

The foregoing statement shows that the contract between
the parties was complied with by each up to the stage of the ex-
change for its cash value, of the paid-up contract executed by
defendant to plaintiff for the sum of $210, payable seventeen
years after date.    As to the method of effecting this exchange
the parties could not agree.    Plaintiff insisted that he should
receive for the surrender of said contract a sum of money
which put at interest for the time the contract had to run would
amount to its face value at maturity, or to express the idea of
figures that he was entitled to receive $113.75, since interest
thereon at five per cent for seventeen years when added to the
principal, would aggregate $210.    On the other hand, defend-
ant contended that it was settled upon the surrender of said
paid-up contract by paying that sum which would remain after
deducting five per cent of its face value for seventeen years;
or, to put its contention in figures that it would only owe
plaintiff on such exchange $31.50, because five per cent of
$210 is $10.50, and this multiplied by seventeen would make
$178.50, which deducted from $210 would leave $31.50
as    the    cash    value    of    the    paid-up    contract    to    pay

$210 in seventeen years. The original contract makes provision for ascertaining the cash value of a paid-up contract issued as in the case at bar, to wit: "Such cash value shall consist of the principal sum of such paid-up contract, less a discount of five per cent per annum for the unexpired term." This clause was put into the engagement of the parties to define their respective rights and obligations, in the event of an exchange of a paid-up contract for its cash value. A consideration of the terms used leaves no room for construction. They show that it was the expressed purpose of the parties to arrive at the cash value of a paid-up contract by taking from its face value a fixed sum. This is conclusively denoted by the use in the above clause of the words "principal sum" and "less." These words establish a rule, agreed upon by the parties, for ascertaining the cash value of the paid up contract by deducting a certain sum from the face value; in other words the "principal sum" expressed in the contract. To arrive at the sum to be thus subtracted the clause requires that "a discount of five per cent per annum for the unexpired term" shall be paid. The only question, therefore, is, what shall be the subject of this discount? Is it meant to be arrived at by taking the given per cent of the sum mentioned in the contract, or does it mean the ascertainment of an unmentioned quantity, which added to the interest thereon at five per cent would amount to the principal sum specified in the paid-up contract? It is evident that the latter meaning can not be given to the term "discount" as used in the above clause. For if it could the preceding words, prescribing that the cash value of the paid-up contract shall be the remainder after taking from the principal sum—as a subtrahend —the discount specified, would have to be expunged from the clause under review. On the other hand, the language of the clause under review necessarily implies the former method of procedure. Its requirements can not be observed in any other manner. For it demands, not the finding of some unknown

quantity which with interest would equal the face of the contract, but the lessening of the principal sum mentioned in the contract, to wit, $210, by five per cent for seventeen years. This is the plain meaning of the words used by the parties. It follows that the language of the clause under review as to the method to be used in fixing the cash value of a paid-up contract negatives the application of the mathematical rule (contended for by appellant) for finding the present value of an immature obligation to pay money. This mathematical rule is clearly correct and just, because it determines the exact value of a given contract according to general commercial standards. It would be the legal rule applicable to this case, if the terms of the contract under review, interpreted in their usual and ordinary sense, did not necessarily imply that a different method known in finance as banking discount was the one actually agreed upon by the parties. The clear and unambiguous terms of a contract which violates neither the law nor public policy, must regulate the rights and duties of the parties, in the absence of all evidence of fraud or imposition. We have no right to substitute for the contract of the parties another which we might otherwise deem fairer or more equitable in its provisions. The result is that the judgment herein is affirmed. All concur.