TOWER GROVE BANK & TRUST COMPANY, a Banking Corporation, Appellant, v. HERMAN DUING, EDNA DUING, RAYMOND J. TOMBRIDGE, E. ALICE TOOHEY, MARY TOOHEY and GERALD RYAN.—144 S. W. (2d) 69.

Division One, October 31, 1940.*

*NOTE: Opinion filed at May Term, 1940, June 28, 1940; motion for rehearing filed; motion overruled at September Term, 1940, October 31, 1940.

*Dubail, Judge & Winter* for appellant.

*Foristel, Mudd, Blair & Habenicht* and *Abeken & Bergmann* for Herman Duing and Edna Duing.

CLARK, J.—Appeal by plaintiff from a decree in the circuit court of the City of St. Louis in favor of defendants, Herman Duing and Edna Duing. The suit is in equity to set aside a deed executed and delivered to said defendants by Raymond J. Tombridge, as trustee, under foreclosure of a deed of trust on real estate. ▇ Being an action in equity we hear the case *de novo*. However, this court will usually defer to the findings of the chancellor unless satisfied that they

are against the weight of the evidence. [Fessler v. Fessler, 332 Mo. 655, 60 S. W. (2d) 17, and cases cited.]

Briefly, the evidence shows: that on September 25, 1922, E. Alice Toohey and Florence M. Toohey executed and delivered to Clarence R. Dowlin a promissory note for $3000, due in three years after its date, and six semi-annual interest notes for $90 each, and at the same time executed and delivered a deed of trust on certain real estate to secure said notes, Raymond J. Tombridge being named as trustee in the deed of trust. The principal note was extended from time to time and new interest notes executed, the last extension being for three years from September 25, 1931. It is conceded that the defendants, Duing, were the holders of the notes in due course on March 25, 1933, the principal note having been endorsed in blank by the payee. The deed of trust provided that failure to pay any interest note when due would cause the whole sum to become due. Debtors made default of the interest note falling due on March 25, 1933. Shortly before that the Duings had been informed that debtors would be unable to make further payments of either principal or interest and a few days before March 25 they placed the notes, deed of trust, insurance policies and certificate of title in the hands of the trustee, Tombridge, and instructed him to foreclose. He published the notice of sale in the St. Louis Daily Record, a daily newspaper published in said city, for the time specified in the deed of trust, the first publication being on April 1, 1933. Public sale was held on April 25, 1933, and Tombridge bid in the property for the Duings for the amount of the principal note. Tombridge executed and delivered to the Duings a trustee's deed, which they promptly recorded.

During 1933 and for many years prior thereto, Raymond J. Tombridge conducted the Tombridge Real Estate Agency, a corporation, of which he was the president and sole manager. This Agency was constantly indebted to the plaintiff bank in varying amounts; on March 17, 1933, the amount due being $8300 secured by various collateral notes. Several times the bank extended the loan for a few days at a time and frequently demanded that the Agency reduce its indebtedness or deposit additional security. Some time late in March or early in April, 1933, the exact time being uncertain, Tombridge delivered to the bank as additional collateral the principal note which he had received from the Duings and all the outstanding interest notes, except the one falling due on March 25, 1933. This was done without the knowledge or consent of the Duings. In May, 1934, the bank held a public sale and claim to have bought these notes as well as all other notes pledged to it by Tombridge. Other facts, as shown by the evidence, will be mentioned later.

Appellant contends: that the Duings clothed their agent, Tombridge, with indicia of title, thereby enabling him to transfer the notes to the bank; that, as pledgee, the bank was a holder for

value and without notice; that, as the *pledge* of the notes to the bank made it a holder in due course, it had the right to *sell* the notes to itself after it had knowledge of Tombridge's lack of authority to pledge them; that the trustee's deed to the Duings was without consideration.

Respondents contend: that, because of the wording of the extension agreement and the fact that it was unsigned, the principal note was nonnegotiable and overdue when pledged to the bank; that, as it was conceded the Duings were holders in due course and the evidence shows that Tombridge had no authority to pledge the notes, the bank had the burden to show that it acquired them in good faith and without notice, which burden the bank failed to sustain; that the bank has received full payment of the Tombridge indebtedness from collateral other than the Duing notes.

We hold that the principal note was not overdue at the time it was pledged to the bank, notwithstanding that the last extension agreement was unsigned. [Baade v. Cramer, 278 Mo. 516, 213 S. W. 121; Fisher v. Stevens, 143 Mo. 181, 44 S. W. 769.] Besides, the fact that notes for future interest, duly executed by the makers of the principal note, were delivered to the bank with the principal note, is evidence that time for payment had been extended. Also, respondents admit the extension in their answer.

The note was not rendered nonnegotiable by the terms of the extension, which required "that all the stipulations, agreements and conditions specified in the deed of trust securing this note shall be complied with, otherwise this extension is null and void." Respondents contend that, since the deed of trust requires the payment of taxes, keeping the property insured, etc., the extension agreement contained a promise to do something in addition to the payment of money, in violation of Section 2634, Revised Statutes Missouri 1929, Mo. Stat. Ann., p. 646. That section is a part of our Negotiable Instruments Law which has been enacted in substantially the same form in most of the states. Under that law it is generally held that a note payable at a fixed or determinable time is not rendered nonnegotiable by a provision for acceleration for nonpayment of interest, taxes, insurance, etc., even though such provision is by its terms automatic and not expressed to be at the option of the holder. Most of the cases construe such a provision to be optional. [See 8 Am. Jur., p. 31, sec. 286; also discussion in 32 Harvard Law Review 767.] We think that is the correct view because such acceleration provision is for the benefit of the holder and one which he may waive. Indeed, in the instant case the Duings did not claim acceleration on account of the failure of debtors to pay the taxes for 1932, but waited until default in the payment of interest. Section 2631, Revised Statutes Missouri 1929, Mo. Stat. Ann., p. 645, states that a provision for acceleration on account of default in the payment

of interest does not destroy the negotiable character of the note. We hold that the principal note did not become due until the Duings exercised their option by ordering foreclosure after default of the interest note on March 25, 1933. Then the whole sum became due, as between the holder and the makers, but there was nothing on the notes to charge the bank with knowledge that the Duings had exercised their option to accelerate payment and cause the notes to become due.

The Duings, by clothing their agent, Tombridge, with indicia of ownership made it possible for him to pledge the notes, and the bank acquired title as pledgee unless it had actual knowledge of the defect in Tombridge's title or the circumstances show that the bank acted in bad faith. [Baade v. Cramer, supra; Downs v. Horton (Mo. App.), 209 S. W. 595; same case, 287 Mo. 414, 230 S. W. 103; Link v. Jackson, 158 Mo. App. 63, 139 S. W. 588.]

Respondents contend that, as it was shown that Tombridge fraudulently pledged the notes in violation of his instructions, the burden shifted to the bank to prove that it acquired the notes in good faith and without knowledge of the fraud. In this connection, respondents cite: Section 2687, Revised Statutes Missouri 1929, Mo. Stat. Ann., p. 681. Read literally, this section would seem to sustain respondents' contention, but in State ex rel. Stevens v. Arnold, 326 Mo. 32, 30 S. W. (2d) 1015, this court held that the statute refers to the "burden of evidence" rather than the "burden of proof;" and that the holder of negotiable paper in due course does not have the burden of proving that he had no knowledge of an infirmity in the note and acted in good faith in acquiring it. This court, en banc, reached the same result in State ex rel. Strohfeld v. Cox, 325 Mo. 901, 30 S. W. (2d) 462, approving the earlier case of Downs v. Horton, 287 Mo. 414, 230 S. W. 103. Those cases announce the correct rule that the "burden of proof" of a necessary allegation remains with the party asserting it throughout the case, while the "burden of evidence," or the necessity of meeting prima facie proof offered by an opponent, may shift from time to time during the progress of the trial.

We do not think that defendants (respondents) sustained the burden of proving that the bank had knowledge of the infirmity in Tombridge's title to the notes or acted in bad faith at the time it received them as collateral on Tombridge's indebtedness.

Just when the bank learned of the fraudulent conduct of Tombridge is not made clear by the evidence, but certain it is that the bank had such knowledge not later than September, 1933. Months after that, in May, 1934, the bank, with full knowledge of the defect in Tombridge's title, forclosed all the Tombridge collateral, including the Duing notes, and bought at its own sale. The appellant bank contends that this sale gave it full title to the collateral under the principle of law that "a holder in due course may sell to a person with notice and the latter will succeed to the rights of him from whom

he bought." That is a correct statement of an abstract principle of law, but we doubt that it can be applied to the facts of this case. Neither the bank nor its attorney who conducted this sale kept any record of it. The witnesses were uncertain as to the exact amount bid for the pledged property. No credit was placed on the Tombridge indebtedness at the time of this sale, credit being given thereafter from time to time as cash was realized from the Tombridge collateral. Under all the circumstances, we think the bank was in the same position, with respect to the Duing notes, after this sale as it was before. In other words, it stands as a pledgee of the Duing notes. But, as pledgee, its interest in said notes goes only to the extent of its lien. That is, it is interested in the Duing property only to the extent necessary to make up any balance remaining due on the Tombridge indebtedness after the bank has realized upon all the other collateral which Tombridge rightfully pledged. In Speer v. Home Bank, 200 Mo. App. 269, l. c. 275, 206 S. W. 405, it was said: "It is undoubtedly a well-established rule that where a creditor has a lien on two funds, or two parcels of property, and another creditor has a lien upon but one of them, the former creditor will, in equity, be required to seek satisfaction out of that fund or parcel upon which the other creditor has no lien." [See also International Bank v. The German Bank, 71 Mo. 183, and Section 2656, Revised Statutes Missouri 1929, Mo. Stat. Ann., p. 658.] The Duings were not parties to Tombridge's fraud. At most, they were negligent in making it possible for Tombridge to pledge their notes to the bank and thereby procure an extension on his indebtedness. But the bank, having learned of the fraudulent pledge of the Duing notes and still having other collateral from Tombridge, is required in equity to first satisfy their debt out of such other collateral. If the Tombridge indebtedness has been fully paid by such other collateral, the bank has no interest in the Duing notes. This was an affirmative defense and the burden was on defendants to prove it. They endeavored to make such proof over the constant objections of the appellant. The proof shows: that on August 14, 1933, the bank held collateral notes on the Tombridge debt amounting to $20,800, secured by property appraised by the bank at $33,000. At the time of the trial the bank had received enough in cash to reduce the Tombridge indebtedness to less than $2500 and had foreclosed and secured the title to three other parcels of collateral. The value of these three parcels was not shown, but defendants proved that they were appraised by the bank as follows: property at 1022 Rutger Street, $700; at 6422 Marquette, $4000; and at 5714 Morganford, $6000. Witnesses for the bank testified that there had been some depreciation in these parcels and some expense incurred in securing title, but they offered no evidence tending to show that the depreciation and expense would reduce the value to less than the balance of the debt. Conceding that the burden of

proof remained with defendants, we think the burden of evidence shifted to the bank after defendants had proved by the *bank's own appraisal* that the value of these three parcels exceeded the balance of the debt.

There is no merit in appellant's contention that the trustee's deed from Tombridge to the Duings was without consideration. They bid in the property for the amount of their debt without knowledge that Tombridge had fraudulently parted with their note. We cannot say that the decree of the chancellor is against the weight of the competent evidence. Accordingly, the case must be and is hereby affirmed. All concur.