Isaac ANDRES, Respondent,

v.

E. E. BROWN, Appellant.

No. 45391.

Supreme Court of Missouri,

Division No. 1.

April 8, 1957.

Roy K. Dietrich, Hubert L. Rowlands, Dietrich, Tyler & Davis, Kansas City, for appellant.

Kenneth E. Bigus, Leon E. Bloch, Jr., Kansas City, for respondent.

HOLLINGSWORTH, Presiding Judge.

This is an action on a "third vendor's lien and deed of trust note" for the principal sum of $6,300, executed in the State of Texas as a part of the purchase price of land situate in that state.

Plaintiff, alleging that he was the holder in due course of the note upon which, according to its terms, there was due and payable in excess of $7,500, sought judgment against defendant as the maker thereof for the amount due. Defendant denied plaintiff's ownership of the note, denied its negotiability, denied that plaintiff was the holder in due course, denied any indebtedness whatever to plaintiff, and affirmatively pleaded fraud on the part of the payee and another in the procurement of the note, of which plaintiff allegedly had knowledge, to defendant's damage in excess of the amount of the note, and alleged that said note was a nullity "by reason of want and failure of consideration." Trial of the issues to a jury resulted in a verdict for defendant and judgment was so rendered. Thereafter, plaintiff's motion for new trial was sustained upon grounds (1) that the verdict of the jury was against the weight of the evidence, and (2) error in the giving of defendant's Instruction No. 9. Defendant has appealed, asserting that his motion for a directed verdict made at the close of the evidence should have been sustained.

At the outset, two indisputable propositions of law should be noted: First, the trial court is vested with broad discretion in granting one new trial upon the ground that the verdict and judgment are against the weight of the evidence, and the sustention of such a motion will not be disturbed, except in the case of manifest abuse; and where a new trial on such ground is granted the appellate court reviews the record to ascertain only if there was substantial evidence to warrant a verdict for the party in whose behalf the motion was sustained. Albert J. Hoppe, Inc., v. St. Louis Public Service Co., Mo., 235 S.W.2d

347, 349; Dawson v. Scherff, Mo., 281 S.W. 2d 825, 831; Liddle v. Collins Construction Co., Mo., 283 S.W.2d 474, 477. Second, in the absence of a confidential or fiduciary relationship, the rule is universal that fraud will not be presumed but must be affirmatively proved, and the burden of such proof rests upon the party who relies upon it either for the purpose of attack or defense. 37 C.J.S., Fraud, § 94, pp. 393 et seq.; Dysart v. Flemister, Tex.Civ.App., 140 S. W.2d 350, 352; Thomason v. Beery, Mo., 235 S.W.2d 308, 312. Hence, the pleader of fraud, if it be denied, is always confronted with the risk of non-persuasion of the trier of the fact and also, of course, the further risk that the trial judge will determine that the jury's finding of fraud is against the weight of the evidence.

At this point we must determine whether the note in suit is a negotiable instrument under the laws of Texas. If negotiable, we need then to determine whether there was substantial evidence that plaintiff was the holder in due course. The substance of the provisions of the Uniform Negotiable Instruments Act was in effect in Texas at all the times herein mentioned. Title 98, Articles 5932 to 5948, 17 Vernon's Tex.Civ.Stat.Ann. Article 5932 requires that a negotiable promissory note (1) be in writing and signed by the maker; (2) contain an unconditional promise to pay a sum certain in money; (3) be payable on demand or at a fixed or determinable date, and (4) be payable to order or bearer. Said article further provides that an "unqualified order or promise to pay is unconditional within the meaning of this Act, though coupled with: * * * A statement of the transaction which gives rise to the instrument; but an order or promise to pay out of a particular fund is not unconditional."

The note in suit reads:

"Third Vendor's Lien And
Deed of Trust Note

"Dallas, Texas, August 23rd, 1950

"On or before 2 years after date, for value received, the undersigned hereby promise to pay to Tomie L. Denson, a single man, or order, at Dallas, Texas, the principal sum of Six Thousand Three Hundred And No/100 Dollars with interest thereon from date until maturity at the rate of 4 per cent. per annum, payable semi-annually.

"This Note is given in part payment for a certain lot or parcel of land situated in Dallas County, Texas, viz: (Here follows description of real estate described in the deed of trust.) this day conveyed to me by Tomie L. Denson and to secure the payment of same according to the tenor hereof, a Vendor's Lien is retained in said conveyance, and is hereby acknowledged; and as further security for the payment hereof, a Deed of Trust is this day given to S. C. Whiteley, Trustee, for the benefit of the holder hereof.

"Failure to pay this note, or any installment of principal or interest thereon when due, or to comply with any of the agreements set forth in the Deed of Trust securing same, shall, at the election of the holder, mature this note and all other notes, if any, of the same series; and the liens securing same shall become subject to foreclosure proceedings, as the holder may elect.

"If this Note is placed in the hands of an attorney for collection after default, or if collected through the Probate Court, ten per cent. additional on the amount then due shall be paid as attorney's fees.

"This Note, together with all past due interest thereon, shall bear interest at the rate of ten per cent. per annum after maturity until paid.

"This note is a third lien, being inferior to balance due on note originally for $59,500.00 dated 5–23–50, payable to Donald E. Dale and John T. Dale, and to a note of even date herewith for $12,000.00 payable to Tomie L. Denson.

E. E. Brown"

The deed of trust also recites that the note secured therein "is third and inferior to a note originally for $59,500.00 dated May 23rd, 1950, and described in a Deed recorded in Vol. 3326, Page 45, Deed Records of Dallas County, Texas, and to a note for $12,000.00 of even date herewith executed by Grantor herein, payable to Tomie L. Denson, a single man." It further provides, in conventional form, that if there be default in the payment of principal or interest or in the performance of any of the covenants therein set forth, which include an obligation to keep the improvements on the premises insured in favor of the holder of the note and to pay all taxes and assessments as they become due, then, at the option of the holder of the note, the whole of the indebtedness secured thereby shall become due and payable, and may be collected by suit or by foreclosure.

Defendant says that the declaration in the note that it is a "third lien" destroys its negotiability; that a "lien" constitutes a legal claim or charge on the property given as security for the debt, and that "being a qualified right of property, it includes certain promises and agreements on the part of both parties, which may be independent, mutual or reciprocal, but which do not fit into the pattern of a negotiable instrument * * *"; that since "we are referred to both the first and second notes secured by other liens, as well as to any other liens which may be prior to the 'third lien', and in addition to insurance policies and tax records, we can only determine the date of payment and the amount to be paid by an extensive investigation of other documents of record * * *"; and that "the amount to be paid * * * is an uncertain amount * * *."

In support of his contention, defendant cites American Exchange Nat. Bank v. Steeley, Tex.Civ.App.1928, 10 S.W.2d 1038, 1039, dealing with a trade acceptance which recited that " '(t)he obligation of the acceptor arises out of the purchase of goods from the drawer.' " The court said: "It may be stated as the general rule that,

wherever a bill of exchange or promissory note contains a reference to some extrinsic contract in such a way as to make the bill or note subject to the terms of that contract, the negotiability of the paper is destroyed." It was determined, however, in that case, that the above quoted clause in the trade acceptance was "no more than a statement of the consideration, or a reference to the origin, of the transaction, and did not destroy the negotiability of the instruments."

Defendant has also cited the case of Prichard v. Cowick, Tex.Civ.App.1956, 287 S.W.2d 689, 691, involving a transaction wherein the note in suit "was subject to discount on payment under certain conditions and one element determining the amount of discount was that the same was conditioned on a sale of the studio." Such note was held non-negotiable because there was no obligation "to pay a sum certain in money". The case is not in point.

The case of Lane Co. v. Crum, Tex.Com. App.1927, 291 S.W. 1084, 1085, also cited by defendant, deals with trade acceptances containing the clause: " 'The obligation of the acceptor * * * arises out of the purchase of goods from the drawer, maturity being in conformity with the original terms of purchase.' " The court held that the obligation of the acceptor arose not from the instruments themselves but from a collateral transaction. In the instant case, of course, the opposite is true. The note is the primary obligation and the deed of trust is merely security for its payment.

More to the point on the issues here presented is the recent case of Continental Nat. Bank of Fort Worth v. Conner, 1948, 147 Tex. 218, 214 S.W.2d 928, 931, cited by plaintiff. In that case the note recited:

" 'Failure to pay any portion of the principal or interest hereon * * *, or failure to perform any agreement contained in the below mentioned lien instrument shall, at the option of the holder thereof, mature this note.

" 'This note is secured by mechanic's lien of even date between Maker and Payee relating to: Lot 11 in Block 4, Homer L. Aikman Addition to the City of Fort Worth in Tarrant County, Texas, to which said mechanic's lien contract reference is hereby made * * *.' "

It is readily seen that the note there under consideration went much further in its statement of the transaction which gave rise to the instrument than the note here in suit. The court decided, however, that: "The expression 'to which said mechanic's lien contract reference is hereby made' seems either the usual layman's idea of 'making it legal' or just another instance of our inherited professional weakness for tautology. It might also be explained as the convenient equivalent of a more elaborate 'statement' of the underlying transaction as permitted by Art. 5932, supra. See Paepcke v. Paine, 253 Mich. 636, 235 N.W. 871, 75 A.L.R. 1205."

The court then went on to consider the contention there made that the reference in the note to acceleration upon "failure to perform any agreement contained in the * * * lien instrument" rendered the note non-negotiable. Its conclusion was: "It has been held in this state that an acceleration option based on failure to pay an installment of principal or interest as required in the note itself does not so condition or render uncertain the maker's primary obligations as to defeat negotiability. [Case cited.] And an impressive line of decisions from other states reaches the same result where the provision in question, as in the instant case, bases the acceleration option upon violation of a term or terms of an accompanying mortgage or other security contract. [Cases cited.] We accordingly conclude that the pledged note in suit was a negotiable instrument and therefore enforceable against the defendant makers without regard to their defenses against the payee under the contract, if or to the extent that plaintiff bank was a holder in due course, having acquired

its interest in the note in good faith for value before maturity. Art. 5935, Sec. 52 R.C.S."

The aforesaid case has been followed and cited with approval in Magee v. I. & G. N. Wood & Coal Co., Tex.Civ.App., 269 S.W. 2d 498, 500–501; Zarsky Lumber Co. v. Guiberteau, Tex.Civ.App., 270 S.W.2d 630, 633.

The law of Texas, as announced in those cases, is also the law of most jurisdictions in which the substance of the Uniform Negotiable Instruments Act has been enacted. In those states it is generally held that a note payable at a fixed or determinable date is not rendered non-negotiable by a provision for acceleration for non-payment of interest, taxes, insurance, et cetera, even though such provision is by its terms automatic and not expressed to be at the option of the holder. 8 Am.Jur., Bills and Notes, p. 31, § 286; Tower Grove Bank & Trust Co. v. Duing, 346 Mo. 896, 144 S.W.2d 69, 71, 152 A.L.R. 1325.

We hold that the note here in suit was negotiable. The next question for determination is, therefore, whether there was substantial evidence that plaintiff was a holder in due course.

Article 5935 of the aforesaid Texas Statutes defines a holder in due course as one who has taken the instrument under the following conditions: (1) that it is complete and regular on its face; (2) that he became the holder before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; and (4) that at the time it was negotiated to him he had no notice of any infirmity or defect in the title of the person negotiating it. Said article further provides that a "holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

Plaintiff, aged 73 years, testified by deposition that he was and had been since 1907 a resident of Dallas County, Texas; that he was physically unable to attend the trial of the case in Kansas City; that he retired from the grocery business prior to 1950 and was presently engaged in buying and selling notes; that he had had business dealings with the payee in the note, Tomie L. Denson, and an associate of Denson, J. B. Martin; that he bought the note from Tomie L. Denson on the 23rd or the 24th day of December, 1950, in return for which he cancelled $4,500 or $4,800 of indebtedness owing him by Denson and Martin and in addition thereto paid them some cash, the exact amount of which he could not recall; that upon the purchase of the note Denson endorsed it over to him and also executed and delivered to him an instrument transferring the lien; and that at the time of the purchase of the note and transfer of the lien he did not know defendant and had no knowledge of the transaction out of which the note arose, or any notice of any claim on the part of defendant or any one else that the validity of the note was in question.

The transfer of the lien, introduced in evidence by plaintiff, consists of a filled-in printed form apparently in general use in the State of Texas. It is dated December 24, 1950, is signed by the payee in the note, Tomie L. Denson, and bears the notarial acknowledgement and seal of J. N. Denny, notary public, reciting that Tomie L. Denson, known to him to be the person whose name is subscribed to the instrument, personally appeared before him and acknowledged that he executed it for the purposes and consideration therein expressed on the 23rd (sic) day of December, 1950. A certificate of the county clerk of Dallas County attached to the assignment recites that it was filed for record on January 3, 1951, and was recorded on January 27, 1951.

The transfer instrument describes the note, states that it is secured by a deed of trust recorded in a specified book and page of the records of Dallas County, Texas,

followed by a description of the land upon which the note constitutes a lien, and recites that for a consideration of "Ten dollars and other good and valuable considerations" to Tomie L. Denson paid by Isaac Andres, Denson has sold, transferred and conveyed and does hereby sell, transfer and convey to Andres said note and said lien "to have and to hold the same unto Isaac Andres forever."

At the close of plaintiff's case in chief, defendant Brown adduced substantial evidence in support of his contention that plaintiff was not an innocent purchaser of the note for value before maturity. Thereupon, plaintiff, in rebuttal, called to the witness stand Tomie L. Denson and J. B. Martin, who testified to their innocence of any fraud in connection with the transaction out of which the note was executed and corroborated the testimony of plaintiff tending to show that he became and was the holder of the note in due course.

■ The foregoing résumé of the testimony relating to the issue of plaintiff's being an innocent holder of the note in due course for value before maturity or default in any term or provision thereof speaks for itself. It is substantial and, if believed, would require a finding in favor of plaintiff in this case. The trial court did not abuse its discretion in granting plaintiff a new trial on the ground the verdict and judgment were against the weight of the evidence.

■ Instruction No. 9, given at the instance of defendant, directed the jury that if it found that the note sued upon was obtained by fraud "as alleged by this defendant * * * then you are instructed that you are to consider all of the facts and circumstances surrounding the purported transfer of the said Note to Isaac Andres, * * * and you * * * may take into consideration the inadequacy of the amounts paid for the transfer of the said Third Vendor's Lien and Deed of Trust Note to Isaac Andres, * * * and you are further instructed that inadequacy of purchase price may be considered as evidence of bad faith * * * and such inadequacy of purchase price may, with suspicious circumstances, * * * authorize you to find bad faith on the part of the aforesaid Isaac Andres * * * and that [he] is not a holder in due course."

This instruction permits the jury to rove far afield (1) in determining whether the note was obtained by fraud "as alleged by defendant", and (2) in determining, without any guide whatever, the quantum of "suspicious circumstances" it would accept, along with its concept of what constituted "inadequacy of purchase price", as sufficient evidence to warrant a finding of bad faith on the part of plaintiff in the purchase of said note. The instruction was erroneous.

■ In connection with the same subject matter, we note that Instruction No. 1, given at the instance of plaintiff, advises the jury that the note was negotiable and that plaintiff was entitled to recover if the jury found it was negotiated to plaintiff before maturity for value and that plaintiff took it in good faith without notice of infirmity or defect in title, and then states "all of which must be presumed to be the case until the contrary is made to appear by evidence." The Texas statute, Article 5935, Section 59, declares that every holder is deemed prima facie to be a holder in due course. There was evidence in this case, however, that plaintiff was not a holder in due course. Consequently, any presumption that may have existed went out of the case. But, in any event, it was improper to instruct the jury as to presumptions. The problem of the burden of proof and the frequent shifting of the burden of evidence in cases similar to this depend to such an extent upon the course of the evidence as to make it unwise to attempt any further directions on that phase of any future trial of the case.

The order of the trial court setting aside the verdict and judgment is affirmed and the cause is remanded.

All concur.