**CAPITAL CITY MOTORS, INC.,**
a corporation, Respondent,

v.

**THOMAS W. GARLAND, INC.,**
a corporation, Appellant.

No. 49256.

Supreme Court of Missouri,

Division No. 1.

Dec. 11, 1962.

Motion for Rehearing or for Transfer to Court En Banc Denied Jan. 14, 1963.

Rassieur, Long & Yawitz, Elliott P. Koenig, Allen A. Yoder, St. Louis, for appellant.

Buckley & Campbell, R. Forder Buckley, Robert Lee Campbell, St. Louis, for respondent.

HOUSER, Commissioner.

This is a suit on a promissory note, tried to the court without a jury. The court found for plaintiff, the holder in due course, and rendered judgment against the maker for $21,912. Defendant, the maker, appealed.

On November 23, 1951 Thomas W. Garland, Inc. executed and delivered to Granvil E. Bates a negotiable promissory note for $25,000, payable in annual installments of $1,000 each, beginning November 23, 1952, and a like sum on the 23rd day of November each year thereafter through November 23, 1976, together with 4% per annum interest "on the full amount of principal sum remaining unpaid on each installment payment date." The note contained the following acceleration clause: "In the event of default in any annual installment or interest payment due hereunder, the Lender may at his option declare the entire amount of principal and interest then remaining unpaid hereunder immediately due and payable."

The maker paid the annual installments of principal and interest called for by the note on November 23 in each of the years 1952–1958, both inclusive. On May 25, 1959 plaintiff Capital City Motors, Inc., became the holder in due course of which notice was given the maker on June 10, 1959. The balance due on the principal at

this time was $18,000. On August 10, 1959 the holder wrote the maker a letter offering to sell the note to the maker at a discount, for $15,000 cash. The holder did not pay anything on the note prior to or on November 23, 1959. Nothing was paid on November 24, 1959. On the morning of November 25, 1959 the holder's vice-president telephoned the maker's president, reminding him that the installment payable November 23, 1959 was past due, but not demanding payment thereof. In this conversation the parties discussed the possibilities of the maker paying the note for a lump sum less than the sum of the installment then due plus installments to come due in the future. The maker's president stated that his board of directors had not yet determined to pay off the note as offered on August 10; that the board was meeting on that day; that after the board met he would advise the holder's vice-president the board's determination to accept or reject the offer. The holder's vice-president did not declare the entire balance of the principal and interest called for by the note due and payable during this conversation. The holder's vice-president was advised at 5:05 p. m. November 25, 1959 that the board had declined to accept the offer and that a check covering the installment of principal and interest due November 23, 1959 would be put in the United States mail that evening. On the next day, November 26, 1959, Thanksgiving Day, the holder's board of directors discussed defendant's failure to make the installment payment on its due date but did not declare the entire balance of the note immediately due and payable. The board gave its vice-president authority to discuss the matter of nonpayment and acceleration of maturity of the note with the attorney for the corporation, and authority to agree on any course of action the attorney should recommend. No attempt was made by the vice-president or any member of the board of directors of the holder to contact the attorney until about noontime on Friday, November 27, 1959. On the morning of

Friday, November 27, 1959 the holder received in the mail a check drawn by the maker, dated November 25, 1959, payable to the holder in the amount of $1,720 drawn upon Manufacturers Bank and Trust Company of St. Louis. The maker had placed this in the mails on November 25, 1959, addressed to the holder at its principal place of business in the City of St. Louis. At all times mentioned there was sufficient money on deposit in the bank to the credit of the maker to cover the amount of the check. Upon receipt of the check it was placed on the desk of the holder's vice-president, in accordance with customary office procedure, for approval for retention and deposit. The customary office procedure was to separate incoming checks in two groups, those approved for deposit, and those not approved for deposit. Those approved were given to the secretary for typing a deposit-endorsement thereon and for the preparation of a deposit slip. After the check was received by the vice-president it was either handed by the vice-president to the secretary or she took it from his desk, and typed an endorsement on the reverse side, which read, "For deposit and to use of Capital City Motors, Inc." The customary procedure was to prepare a deposit ticket on which the check would appear as an item for deposit, at the time the endorsement was typed on the reverse side of the check, but the secretary does not remember whether that was done in this instance. Thereafter the vice-president pulled the check from the deposit, called the corporation's attorney, and they mutually agreed to return the check to the maker and declare the entire balance of the note due and payable. Until this event, the holder had not exercised its option to declare the entire balance due and payable. The typewritten endorsement on the reverse side of the check was erased by one of the holder's employees. Thereafter the holder's attorney prepared a letter, which was approved by the vice-president and mailed to the maker, which letter, dated November 30, 1959, recited the fact that a payment

of $1,000 principal and $720 interest was due and payable November 23; that it was not paid; that a check dated November 25 for $1,720 was mailed November 25, "two days after the due date"; that this check "was not received until November 27, 1959, four days after the date on which the payment was required to be made by the terms of the note." The acceleration option was quoted, and the maker was advised that the holder "has, by reason of your default, elected to declare the entire amount of principal and interest immediately due and payable, and demand is hereby made upon you for full payment immediately," and that if payment was not made at once suit would be filed. The check was returned. Nothing further occurring, suit was filed on the note on December 22, 1959, and on January 21, 1960 the maker tendered and paid into the registry of the court the sum of $1,720 for the benefit and to the use of the holder. On November 21, 1960 the maker tendered to the holder the annual installment payment of principal and interest due; the holder refused the tender, and by stipulation and agreement the payment (in the sum of $1,-680.45) was deposited into the registry of the court for the benefit and to the use of the holder.

█ The maker's failure to pay the $1,720 on or before November 23 did not automatically and ipso facto mature the entire debt, Wolfley v. Wooten, 220 Mo. App. 668, 293 S.W. 73, because the acceleration clause was not self-executing. Putthoff v. Walker, 213 Mo.App. 228, 248 S.W. 619; Anno.—Acceleration of Note or Mortgage as Automatic or Optional, 159 A.L.R. 1077, III a., p. 1091. An acceleration clause is solely for the benefit of the holder of the note, and may be waived by him. Tower Grove Bank & Trust Co. v. Duing, 346 Mo. 896, 144 S.W.2d 69, 71, 152 A.L.R. 1325. It merely confers upon the holder an option to treat the debt as due. Putthoff v. Walker, supra. If the creditor decides to exercise the option he is required, in order to effectuate an acceleration, to perform some affirmative, overt act evidencing his intention to take advantage of the accelerating provision. Wolfley v. Wooten, supra, 293 S.W., 1. c. 76; 5 A.L. R.2d 970; 10 C.J.S. Bills and Notes § 251 d., p. 750. If he fails to take some affirmative action the full amount will not become due merely upon the happening of the default. 159 A.L.R. 1091; Berkowitz v. Kasparewicz, 121 Conn. 140, 183 A. 693, 104 A.L.R. 1326; Brady v. Selberg, 154 Or. 477, 60 P.2d 1104. Such affirmative action must be taken *before the debtor makes a tender of the amount actually due,* Coman v. Peters, 52 Wash. 574, 100 P. 1002, and until the holder claims his right to accelerate, the maker may terminate the right by a proper tender of performance, 10 C.J.S. Bills and Notes § 251 d., p. 750; National Debenture Corp. v. Smith, Tex.Civ.App., 132 S.W.2d 429; Lee v. O'Quinn, 184 Ga. 44, 190 S.E. 564, and thereby cure the default in payment. (Just as a tender to the trustee of the amount of the interest due will cure the default and prevent a sale under foreclosure. Potter v. Schaffer, 209 Mo. 586, 108 S.W. 60; Philips v. Bailey, 82 Mo. 639; Whelan v. Reilly, 61 Mo. 565.) In other words, the holder of a promissory note which is in default and which contains an acceleration clause may waive or lose his option to treat the entire debt as due, by failure to exercise his option before the debtor makes a proper tender of the amount overdue. 10 C.J.S. Bills and Notes § 251 f., p. 752; Heckert v. Hilscher, 61 Wash. 269, 112 P. 365; Matzger v. Page, 62 Wash. 170, 113 P. 254; Stalder v. Riverside Groves & Water Co., 167 Cal. 560, 140 P. 252. And as stated in Lee v. O'Quinn, supra, 190 S.E., 1. c. 566: "Where the creditor attempts to exercise such option by giving written notice thereof to the debtor by mail, and before receiving such notice the debtor tenders the amount in default, such notice will not be effective to accelerate the maturity of the other installments." In the instant case the holder, Capital City Motors, Inc., took no positive, affirmative action evidencing its election to take advantage

of the accelerating provision until after it had received the check of the maker, Thomas W. Garland, Inc., for $1,720. This tender of the overdue payment, which occurred before the exercise by the holder of its option to declare the whole debt due, cut off the holder's right to exercise the option.

The holder makes no point of the fact that the tender was in the form of a check rather than currency, and we are deciding this case on the assumption that the medium of tender was sufficient. The only remaining question is whether the tender was valid insofar as amount is concerned.

Respondent says the tender of $1,720 on November 27 was insufficient because it did not include an additional four days' interest (from November 23–27) on the unpaid principal in the sum of either $8.00 or $12.00, depending on whether computation is made at 4% or 6%; that to be effective a tender must include all sums due at the time of tender, and the fact that the difference is small is immaterial. At the time of the tender, however, respondent did not owe four days' interest on $17,000, as respondent seems to argue, because respondent had not at that time exercised its option and the interest on the unpaid principal balance, under the agreement contained in the note, was not due until the next installment payment date. The amount actually due at the time of the tender was $1000 principal, plus interest on $1000 for four days (approximately 44¢, figured at 4%, which would be the applicable rate in this case. See Borders v. Barber, 81 Mo. 636; Macon County v. Rodgers, 84 Mo. 66), plus $720 interest.

Respondent's contention is without merit. The law does not concern itself with trifles. Matzger v. Page, supra, 113 P., 1. c.

255; 86 C.J.S. Tender § 8 a., p. 563. Furthermore, respondent waived the 44¢. An objection to a tender, to be available to a creditor, must be timely made, and the grounds of the objection specified, otherwise it is waived. 86 C.J.S. Tender § 12, p. 565. Respondent claims that the reason assigned in its letter of rejection of the check ("by reason of your said default") was broad enough to cover both tardiness and failure to tender the extra interest due by November 27, but we do not agree. The letter read as a whole plainly must be construed as an objection to the tender solely on the ground that the $1,720 was not paid on time. Where a tender is refused by a creditor on the ground that it was late, the tenderee waives the objection to the insufficiency of the amount. "An objection that a tender does not include interest is waived where * * * the tender is refused solely on another ground * * *." 86 C.J.S. Tender § 12 b., p. 565. Not having objected to the amount of the tender at the time the check was received in the mail, on the ground that it failed to include interest on $1,000 for four days, respondent waived the objection. "Who does not speak when he should may not when he would." Thompson v. St. Charles County, 227 Mo. 220, 234, 126 S.W. 1044, 1048.

The judgment is reversed and the cause remanded with directions to enter judgment for defendant.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.