HUGHES, Respondent, v. THE TOLEDO SCALE AND CASH REGISTER COMPANY, Appellant.

**St. Louis Court of Appeals, April 18, 1905.**

1. **MASTER AND SERVANT: Discharge of Employee: Sickness of Employee.** In an action by an employee, who claimed to have been wrongfully discharged by his employer, for salary for his full term, the jury should have been directed to disallow plaintiff wages for the time he was sick and unable to work.

2. ———: ———: **"Whole Time."** Where the contract of employment between the master and servant provided that the employee should give his "whole time and attention" to the business, the employer had a right to discharge the employee if the latter gave his attention to another business whether it interfered with his duties to his employer or not.

3. ———: ———: **Fraud.** If the employee induced the employer to enter the contract of employment by misrepresenting the location and furnishings of the office where he would transact the business, the. employer was warranted in cancelling the contract unless it subsequently waived that delinquency.

4. ———: ———: **Instruction.** In an action by a discharged employee for salary for the full term, instructions, asked by the defendant denying the plaintiff's right to recover upon certain contingencies, are set out in full, and it is held that under the evidence they should have been given.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

REVERSED AND REMANDED.

*Geo. W. Lubke, Geo. W. Lubke, Jr.,* and *A. H. Meads* for appellant.

(1)   The trial court erred in giving to the jury the instructions numbered 1 and 2 as asked by the plaintiff. Besides placing on defendant the burden of showing that plaintiff was rightfully discharged, they placed on defendant the burden of disproving the demands for rent and stenographer's salary set forth in the amended petition which demands were put in issue by the general denial part of defendant's answer.  And as the verdict of the jury was general in form, and also general as to amount, this error in the instructions was not corrected thereby.   Young v. Ridenbaugh, 67 Mo. 574; Dunn v. Danaker, 87 Mo. 597; Chouteau v. Jupiter Iron Works, 83 Mo. 73; Donohue v. W. St. L. & P. Railway Co., 83 Mo. 560; Mound City Paint and Color Co. v. Conlon, 92 Mo. 221, 4 S. W. 922; Elliot v. Creasy, 32 Mo. App. 568. (2)   Sickness of the servant is a good cause for a nonperformance of the contract, and if the sickness is for a lengthened period (in one case two weeks) it releases both parties.   The servant can recover only for the services actually rendered less the damage which the master may have suffered.   Wood on Master & Servant, 2d Ed., pp. 237-238, 247; Fenton v. Clark, 11 Vt. 557.   (3)   The master is not bound to give any reason for the dismissal at the time, and if he does he is not thereby estopped from setting up any other or different cause which really exists when the servant was discharged.   Wood on Master and Servant, 2d Ed., p. 232, sec. 121.   Discharge may be for misconduct without being stated. Ridgway v. Hungerford Market Co., 3 Ad. & Ellis 171; Bailee v. Kell, 4 Bing N. C. 638.   (4)   The language of plaintiff's contract was imperative that he would devote his "whole time and attention and best endeavors to the business" of the defendant.   This wording could not legally be added to or varied by the court.   Parties must abide by their contracts as made.   Courts cannot make

contracts for them or add to or vary the agreements they have made or relieve them from injudicious contracts in the absence of fraud or mistake. Blaine v. George Knapp & Co., 140 Mo. 241, 41 S. W. 787; Staluth v. American Guaranty Co., 81 Mo. App. 627; Thorton v. Royce, 56 Mo. App. 182; Beatie v. Rocky Branch Coal Co., 56 Mo. App. 221.

*Perry Post Taylor* for respondent.

(1)   Case at bar "was not tried until after the expiration of the term of plaintiff's employment." Hence, prima facie, plaintiff was entitled to recover the full contract price agreed upon. Idem. See also: Miller v. Woolman Todd Boot & Shoe Co., 26 Mo. App. 57, 61; Estes v. Desnoyers Shoe Co., 155 Mo. 577, 56 S. W. 316. (2)   It was for defendant to affirmatively show anything that it could in mitigation of these damages and to request proper instructions upon this point. 20 Ency. of Law (2 Ed.), p. 38; Hansard v. Menderson Clothing Co., 73 Mo. App. 584; Wood v. Kelly, 82 Mo. App. 601; Boland v. Glendale Quarry Co., 127 Mo. 524, 30 S. W. 151.

### STATEMENT.

Plaintiff and defendant (a corporation) entered into the following contract:

"Toledo, Ohio, U. S. A., June 12, 1902.
"Mr. W. J. Hughes,
      "213 N. Twelfth Street,
            "St. Louis, Missouri.
"Dear Sir:—

"We hereby employ you for the term of one year beginning not later than June 23, 1902, as special representative of the company, you to devote your whole time and attention and best endeavors to the business of the company in such territory as the company may

direct from time to time. Your duties to be generally, to select and instruct sales agents and to sell scales and assist agents to sell scales.

"Your headquarters are to be at St. Louis, in your present office, 213 North Twelfth street. We hereby agree to rent for one year, with the understanding that the owners of the property have the right to give us three months' notice to vacate said office. We agree to pay thirty dollars per month and no more for said office, we to pay no charges for office fixtures, light or water.

"For the present, you may employ a stenographer and if you think best for the company's interest to employ Miss Hart, you may do so, allowing her not to exceed fifty dollars per month. It is understood and agreed that we do not obligate ourselves to the payment of this sum per month during the entire term of contract, but shall furnish a competent stenographer during the above year.

"Your salary shall be two hundred and twenty-five dollars per month, payable one-half on the first and one-half on the fifteenth of the month. While traveling, we shall pay your actual reasonable traveling expenses, itemized statement of which will be sent to us regularly each week.

"TOLEDO SCALE & CASH REGISTER COMPANY,

"H. THEOBALD, General Manager.

"Accepted June 12, 1902.

"W. J. HUGHES."

Immediately after making the contract plaintiff entered upon the performance of his duties, as agent for the defendant, and continued in defendant's employ until November twenty-third, when defendant rescinded the contract. It paid plaintiff's salary and expenses up to December first, having prior thereto taken possession of its goods, etc., in plaintiff's office.

The petition alleges the wrongful discharge of plaintiff by defendant, his inability to find other pro-

fitable employment, and asks for judgment for his salary for the balance of the term of his employment after his discharge and for rent of office and other expenses, not necessary to set forth as they were not proven and, presumably, nothing was allowed by the jury for them.

The answer is very voluminous, setting forth among other things that defendant was induced to enter into the contract by false and fraudulent representations, set out in detail, which will be noticed further on; that plaintiff did not give his whole time and attention to the business of the defendant, and divers and sundry other allegations to justify the cancellation of the contract.

The new matter in the answer was put in issue by a reply.

The facts are as follows: Defendant is an Ohio corporation doing business and having an office in Missouri. It is a manufacturer of scales and cash registers and has several competitors in the trade. Plaintiff, at the time the contract was entered into, was a general agent of the Moneyweight Scale Company, of Chicago, having the same territory that he was given charge of by the defendant, which included Missouri, Arkansas, Louisiana, Mississippi and Alabama. In these several States plaintiff had under him active and efficient scale salesmen in New Orleans, Louisiana; Little Rock, Arkansas; Birmingham, Alabama, and Jackson, Mississippi, and at other points. At the time the contract was made, plaintiff had his office at No. 213 North Twelfth street, St. Louis, Missouri, which he testified he had fitted up at a cost of three thousand dollars, and had in his employ a stenographer, the Miss Hart mentioned in the contract. At the time plaintiff was the principal stockholder and president (by courtesy, as he stated) of a corporation known as the American Light & Fixture Company, which had its office with plaintiff at No. 213 North Twelfth street. Plaintiff had some correspondence with the defendant before entering into the contract. He went to Toledo, where defendant's head

office is located, and the terms of the contract were agreed upon by him and defendant's general manager and then reduced to writing in the form of a letter. At the time negotiations for the contract were in process plaintiff represented to defendant's superintendent that his office was on the corner of Twelfth and Olive streets, that Olive Street was one of the principal business streets of the city of St. Louis, and that his office was only two blocks from the office of the National Cash Register Company, a rival of defendant's in business, and who maintained an elegantly furnished office on Olive street.

Mr. Theobald, defendant's manager, testified that plaintiff represented to him that his office was as well furnished as that of the National Cash Register Company's. On May twentieth, prior to the making of the contract, plaintiff wrote Mr. Theobald a letter in which he stated: "I will also add in this connection, my office at Twelfth and Olive belongs to me in entirety and the lease is in my name. Olive street is the most prominent thoroughfare in St. Louis. My office is as well furnished as the N. C. R. Company's, which is just two blocks farther east on the same street. I would not exchange locations with them to-day." Mr. Theobald further testifies that plaintiff gave him the names of Klapp, Foy, Baar, Yount and Gallagher, as scale salesmen then working under him and selling goods for the Moneyweight Company, who would leave the latter company and work for the defendant if he (plaintiff) should be employed by defendant. Mr. Theobald testified he knew most of these men, by reputation, to be efficient scale salesmen, and the representation that they would work under plaintiff, if he was given a contract with defendant, was an inducement to defendant to enter into the contract; that plaintiff, in his representation, located Baar at Birmingham, Alabama; Gallagher at Jackson, Mississippi, and Foy at Little Rock, Arkansas, but of

all those named by plaintiff, Yount only came to the service of the defendant company.

Gallagher testified that he did not authorize plaintiff to represent that he would leave the Moneyweight Company and go to the defendant company; that when plaintiff spoke to him on the subject, he told him that under no consideration would he leave the Moneyweight Company if he could get some changes made in his contract with it, and that he would not consider a proposition to go with him to the Toledo Company, until after he heard from his company; that he heard from the latter company and then notified plaintiff that he had made satisfactory arrangements with the Moneyweight Company.

Baar testified that plaintiff, in June, 1902, approached him with the proposition to work under him for the Toledo Company in case he should succeed in making a contract with said company; that he made no statement directly or indirectly to plaintiff to lead him to believe that he would take employment under him for the Toledo Company.

In respect to Baar, plaintiff testified that he found out he was not a reliable salesman and did not try to get him. Plaintiff's excuse for not engaging the others was that defendant first agreed to pay agents forty per cent commission and afterwards cut the commission to thirty and thirty-five per cent, and he could not employ them on the cut rate commission. Plaintiff testified that in addition to the names of Baar, Gallagher and Foy, mentioned to Theobald, as salesmen, he mentioned the names of Benton, Yount, Fox, Latham and Davis, all of whom signed contracts and went to work under him for defendant. Foy and Klapp both testified that they quit working for defendant because their commissions were cut.

There was considerable correspondence by letter between plaintiff and defendant. This correspondence

and the evidence of defendant's agents, who visited plaintiff at St. Louis, tend to show that the St. Louis business was not satisfactory to defendant and that it took exceptions to plaintiff's habits and personal conduct. The evidence further tends to show that the defendant neglected to keep plaintiff's office supplied with scales and other supplies and by cutting the rate of agent's commissions and by raising or threatening to raise the price of the scales, not only crippled its St. Louis business but hindered plaintiff generally in filling orders. There is evidence pro and con that plaintiff gave some of his time to the service of the American Light & Fixture Company. Plaintiff testified that after his discharge he diligently sought profitable employment elsewhere but was unable to find it; that he worked a short time for a typewriter company but found he could make no more than a living at it and quit.

On the measure of damages the court instructed the jury, if the verdict should be for plaintiff, to assess his damages at the contract price for the remainder of the term of his employment after November 30, 1902, deducting any sum which the jury might find from the evidence plaintiff did or might have received for similar services during the term.

Defendant's sixth instruction, as given, is as follows:

"The court also instructs the jury that by the terms of the written contract entered into between plaintiff and defendant dated June 12, 1902, the plaintiff agreed to devote his whole time and attention and best endeavors to the business of the defendant company in the territory which the defendant might designate, and if from the evidence the jury further believe that plaintiff during the time he was acting for defendant under said contract failed to devote his whole time and attention and best endeavors to the business of defendant, and gave attention to the business of another corporation, called the American Light & Fixture Com-

pany, *to such extent as interfered with plaintiff's duties to defendant*, then the defendant had the right to discharge plaintiff, and the jury will find for defendant, *if you further find that it discharged plaintiff because of such failure to give his whole time and attention and best endeavors to defendant's business."*

This instruction was modified by the court by inserting and adding the clauses in italics. Defendant objected and excepted to this modification.

The following instructions asked by defendant were refused by the court:

"4. If from the evidence the jury believe that prior to the making of the written contract of date June 12, 1902, between plaintiff and defendant, the plaintiff represented to the defendant that his, the said plaintiff's, office was located at Twelfth and Olive streets, in the city of St. Louis, that it belonged to him, said plaintiff, in its entirety, that the lease therefor was in plaintiff's name, that said Olive street was the most prominent thoroughfare in said city, and that said office was as well furnished as that of the National Cash Register Company, two blocks further east on the same street, and the jury further believe that all said representations were material inducements to defendant's entering into said contract with plaintiff, that said representations were false and were known to be so by plaintiff when he made them, and that defendant did not discover their falsity until after the time when defendant had entered into said contract with plaintiff, then the defendant had the right to rescind said contract and the jury will find in favor of defendant.

"7. The court further instructs the jury that if from the evidence they believe that after plaintiff went into the service of the defendant company under the contract between the parties dated June 12, 1902, he declined to make sales of the defendant's scales himself, or that he failed to instruct properly salesmen under him and failed to furnish them with the necessary forms

and supplies and failed to assist them in making sales of the defendant's goods, and failed to fill orders for defendant's scales sold by salesmen under him, although the plaintiff had in his possession or under his control the necessary forms and supplies and goods of defendant in stock, and the jury also believe that during said time the plaintiff rendered himself personally unfit in the daytime to discharge the duties of his said employment by the manner and places in which he spent his nights, that he also failed to keep his office in proper condition or to keep the machines of defendant which were on exhibition therein in a proper condition, that he allowed his said office to become dirty and in disorder, and the machines dirty and so broken as to be non-usable, and that plaintiff did also during said time fail to give his best endeavors to the business of the defendant company, and that he failed to send instructors who would give directions to the customers as to the manner of handling and using defendant's machines, and that by said neglect of plaintiff, the sales of such machines were lost to defendant, then the defendant had the right to discharge plaintiff and the jury should find for the defendant.

"11. The court also instructs the jury that after the plaintiff was discharged by the defendant November 23, 1902, he had no right to remain idle, and if the jury under the evidence and other instructions given them by the court find in his favor in this case, they should, in assessing his damages, deduct from his monthly salary fixed by the contract whatever amounts the plaintiff actually earned or with reasonable effort could have earned up to the time of the expiration of said contract.

"12. The court also instructs the jury that the plaintiff is not entitled to recover anything in this action on account of rent."

A verdict for plaintiff, assessing his damages at $1,522.80, was signed by ten of the jurors and returned in court and judgment was entered on the verdict. Defendant appealed.

BLAND, P. J. (after stating the facts).—1. Plaintiff testified that for six weeks after his discharge, and within the term of his employment, he was sick at Hot Springs, Arkansas. One who .contracts to labor for a definite term but fails to fulfill his .contract by reason of sickness, is liable to have the amount.of his recovery reduced by the damages sustained by his employer in consequence of his not being able to complete the full term of service. Patrick v. Putman, 27 Vt. 759. On the same principle, the plaintiff is not entitled to recover wages for the time he was sick and unable to fulfill his contract, had he been called upon to do so, and his instruction on the measure of damages is erroneous, in that it does not direct the jury to disallow wages for the time plaintiff was unable to work.

2. The contract provided that the plaintiff should give his "whole time and attention and best endeavors to the business of the company." It was error, therefore, to modify the defendant's sixth instruction by telling the jury, in effect, that plaintiff might give some of his time to the business of the American Light & Fixture Company, provided such attention did not interfere with plaintiff's duty to defendant, thus engrafting on the contract a proviso or stipulation not agreed to between the parties. Courts can neither make, modify, change or add to contracts made between parties, in the absence of fraud or mistake. Their duty is to interpret and enforce them as the parties themselves have made them. Blaine v. Knapp & Co., 81 Mo. App. 627. The modification at the end of the instruction is predicated both upon the pleadings and the evidence and for this reason is not objectionable.

3. There was abundant evidence upon which to predicate instruction No. 4, asked by defendant and refused by the court, and it should have been given. The location and furnishings of plaintiff's office, as represented to defendant, cannot be said to be of no importance or to have furnished no inducement to defendant to make the

contract.   According to the testimony both representations were materially false and should, if not subsequently waived, of which there is some evidence, furnish sufficient ground to warrant defendant in cancelling the contract.

4.   There is   considerable evidence in the record upon which instruction No. 7, asked by the defendant and refused by the court, could be predicated.   If the jury should find the facts as recited therein, the verdict should be for the defendant.   Plaintiff was made general agent over a large and important territory of the defendant's business.   He agreed to give his whole time and attention and his best efforts to defendant's business.   His wages were liberal and his contract duty was to serve the defendant entirely, faithfully and energetically, and if he wilfully fell short in the performance of this undertaking the defendant had a right to cancel his contract.

5. Instructions Nos. 11 and 12, asked by the defendant and refused by the court, should have been given. The eleventh instruction properly declares the law. There was no evidence tending to show that plaintiff paid any rent after November 30, 1902, and for this reason the twelfth instruction should have been given.

For the errors herein noted, the judgment is reversed and the cause remanded.   All concur in result. *Goode, J.,* does not concur in paragraph two.