Marie Casper, Executrix of the Estate of Henry Casper, Deceased, Appellant, v. Estate of Nina Z. Bell, Deceased, Respondent.— No. 41018.—218 S. W. (2d) 606.

Division One, February 14, 1949.

Rehearing Denied, March 14, 1949.

*Kenneth I. Fligg, Warren E. Slagle* and *Lombardi, Robertson, Fligg & McLean* for appellant.

996

*Eugene C. Kane* and *Walter A. Raymond* for respondent.

[606] BRADLEY, C.—Henry Casper filed a claim in the probate court against the estate of Nina Z. Bell, deceased. The claim was based on two promissory notes. The defense was the 10 year statute of limitations. Sec. 1013 R. S. 1939, Mo. RSA Sec. 1013. The claim was allowed in the probate court for $10,479.08, and appeal was taken to the circuit court. Henry Casper died after the appeal from the probate court and before the cause was tried in the circuit court, and his executrix was substituted as plaintiff or claimant in the circuit court. The claim was disallowed in the circuilt court and this appeal followed.

The two notes upon which the claim is based were originally for $4250.00 each, payable to M. Loeffler (maiden name of Henry Casper's wife); dated May 31, 1930; signed by Nina Z. Bell. Each note was payable $100.00 July 1, 1930, and $100.00 on the 1st day of each succeeding month, except June and December, until paid in full. M. Loeffler (Mrs. Casper) endorsed the notes in blank and delivered them to her husband.

[607] In May, 1930, prior to the execution of these notes, Bell purchased from Henry Casper two apartment buildings in Kansas City. There was at the time a separate deed of trust on each apartment securing two notes in the aggregate sum of $8000.00. Bell purchased subject to these deeds of trust. As a part of the purchase price Bell gave the two notes here involved and secured each by second deeds of trust on the apartment properties. Payments were made by Bell on the first and second mortgage notes, but not according to their terms, and on July 11, 1933, two extension agreements were executed by Bell, Henry Casper and the holders of the first mortgage notes. These extension agreements were identical in form except description of lot upon which each apartment was situate, hence we shall use the singular when referring to the extension agreements. There was at the time of the extension agreement a balance of $3250.00 due on each of the second mortgage notes, and under said agreement the monthly

payments on these notes were suspended until June 21, 1936, at which time Bell was to commence the monthly payments and pay $100.00 per month until the balance on each note was paid in full. Bell died April 19, 1945, and thereafter the first deeds of trust were foreclosed. At the foreclosure sale Henry Casper, Jr., son of Henry Casper, became the purchaser; paid approximately $5300.00 for each of the apartments.

The extension agreement as to the second mortgage notes provided that Bell would "pay to the holder of the second mortgage interest thereon semiannually", but such interest was not paid. The extension agreement also provided that "default for thirty days in any obligation pertaining to either mortgage resting upon said Bell will mature all obligations thereof." Plaintiff (claimant) says that by the extension agreement (July 11, 1933) the monthly payments on the second mortgage notes were given a moratorium until June 21, 1936; that payment of semiannual interest was conditional (see infra); that the acceleration provision in the extension agreement that default for 30 days "will mature all obligations" was optional on the part of the holder of the notes; that the option was not exercised and that limitations therefore did not begin to run 30 days after failure to pay the semiannual interest January 11, 1934; that the first default was failure to pay the monthly payment June 21, 1936, after expiration of the moratorium; that the claim was filed in the probate court on April 23, 1946, less than 10 years from June 21, 1936; and that the claim therefore is not barred by the 10 years statute. On the other hand defendant (respondent) says that payment of the semiannual interest was not conditional; that the acceleration provision was not optional; that there was a default in the failure to pay the semiannual interest January 11, 1934, six months after the execution of the extension agreement and that limitations began to run 30 days from January 11, 1934; that the claim was not filed in the probate court until April 23, 1946, and therefore the claim is barred by the 10 years statute.

If the payment of semiannual interest was conditional and that condition prevented Bell from paying such interest, or if the acceleration provision is optional as plaintiff contends, then the claim is not barred.

As stated, there was a first deed of trust on each of the apartments when Bell purchased in May, 1930. These deeds of trust secured two notes, one for $1000.00, the other for $7000.00. Bell was paying on these notes and had made some payments on the second mortgage notes upon each of which there was a balance due of $3250.00 when the extension agreement was executed. The extension agreement provided that on July 21, 1933, Bell would pay $75.00 on the $7000.00 first mortgage note, and $75.00 thereon on the 21st day of each month thereafter to and including May 21, 1934, and pay

$100.00 June 21, 1934, and $100.00 on the 21st day of each month thereafter until June 21, 1936, at which time she would pay the entire balance of the first mortgage notes which would include the $1000.00 note. The extension agreement then says: "Thereafter (that is after June 21, 1936) she (Bell) will resume monthly payments (meanwhile suspended) on the second mortgage as therein provided. Default for 30 days on any obligation pertaining to either mortgage resting upon said Bell will mature all obligations thereof."

[608] Two questions are presented: First, Was the payment of the semiannual interest on the second mortgage notes conditioned on Bell being able to first make other payments required as is contended by defendant? and second, if not so conditioned, Did failure to pay the semiannual interest January 11, 1934, automatically mature all installments in the second mortgage notes? If so, plaintiff's claim is barred by the 10 years statute. The extension agreement says: "The above monthly payments on first mortgage will be paid to the holder of the said first mortgage $7000.00 note, and will be applied, first to monthly interest on said $7000 note, and any excess will be applied to the monthly interest on said note D (the $1000.00 note) and any excess will be applied upon principal of said $7000.00 note. Said Bell, apart from, after and in addition to the other payments herein, will pay to the holder of the second mortgage, interest thereon semiannually, and such partial payments (after the other payments herein) as she may be able to make from time to time upon the principal thereof." Of the provision, "Said Bell, apart from", etc., plaintiff says: "We submit that this provision considered alone and with reference to the other provisions of the (extension) agreements, provides for a liability conditioned upon the 'other payments herein' having been made, that is, the monthly payments required on the first mortgages being current and up to date, at the time the semiannual interest was to be paid. Bell was not permitted to pay semiannual interest on the second mortgage notes if, at the time, she had not paid all she was required to pay on the first mortgage notes. . . . We think the conditional nature of the interest obligation is conclusively demonstrated by the use of the words 'apart from, after and in addition to' the other payments herein.'"

We do not agree with plaintiff that the payment of the semiannual interest was conditional. The phrase *other payments* as first used has reference to the monthly payments on the first mortgage. And the same phrase as used the second time has reference to the monthly payments on the first mortgage notes *and* the semiannual interest on the second mortgage notes. The phrase, such *partial payments,* has reference to any payments Bell might make on the principal of the second mortgage notes. The extension agreement provided for such payments if Bell could make them.

██ Both the probate court and the circuit court filed memorandum opinions and these are printed in plaintiff's brief. From these opinions it appears that both the probate court and circuit court held that the payment of semiannual interest on the second mortgage notes was not conditional. The probate court, however, held that the failure (January 11, 1934) to pay the semiannual interest on the second mortgage notes did not automatically work a default; that is, that the acceleration provision was optional with the holder of the second mortgage, and that option not having been exercised there was no default until the termination of the moratorium on the monthly payments on the second mortgage notes. The circuit court held that the acceleration was not optional, and such is the remaining question.

As appears above the acceleration provision is that default for 30 days on any obligation will mature all. The holder of the second mortgage notes did not act upon the failure to pay the semiannual interest January 11, 1934, and demand payment, proceed to foreclose, or sue upon the notes. The holder did nothing. And since such is so, if the acceleration was optional, then there was no default until June 21, 1936, when the moratorium on the monthly payments on the second mortgage notes expired, and payment was not resumed.

Was the acceleration provision optional? We think so. In 8 Am. Jur., Bills and Notes, Sec. 286, it is stated: Instruments payable at fixed times frequently provide that if an installment of interest or principal is not paid when due, the holder of the instrument may declare the whole debt due. This option of the holder to declare the whole debt due must be exercised within a reasonable time. The exercise of the option may be effected by a demand upon the person primarily liable upon the instrument. The commencement of an action on the instrument is also a sufficient exercise of the holder's option to declare it due. . . . There is more difficulty [609] with instruments which merely provide that any delinquency or default in the payment of any interest shall cause the whole instrument immediately to become due and collectible. The cases are not agreed as to whether such an instrument becomes due absolutely, or merely at the option of the holder. Some cases hold that the default effects an automatic acceleration, while most courts seem to take the better view that the acceleration in such case is optional with the holder."

In Putthoff v. Walker et al., 213 Mo. App. 228, 248 S. W. 619, the acceleration provision was: "If default is made in the payment of any installment, or interest when due, then all the remaining installments shall become due and payable at once." It was held that the provision was optional. The court said: "It is insisted by plaintiffs that the maturity of the note was accelerated by the failure of the makers to meet the monthly installments, under the precipitation clause contained therein, and it is argued that the entire note auto-

matically became due when the delinquency in payments occurred. But this position is held to be untenable. It is the established and almost universal rule that the acceleration clause is not self-executing, and that it merely confers an option upon the holder to treat the debt as due."

In Tower Grove Bank & Trust Co. v. Duing et al., 346 Mo. 896, 144 S. W. (2d) 69, the acceleration provision was in the deed of trust securing the note. The provision was that "failure to pay any interest note when due would cause the whole sum to become due." It was held that this provision was optional. See also, 32 Harvard Law Review 767, cited in the Tower Grove Bank & Trust Company case. In the Tower Grove Bank & Trust Company case it is stated that most of the cases construe acceleration provisions to be optional, and then: "We think that is the correct view because such acceleration provision is for the benefit of the holder which he may waive."

Defendant cites: Boyd v. Buchanan, 176 Mo. App. 56, 162 S. W. 1075; Stark Bros. Co. v. Gooding, 175 Mo. App. 353, 162 S. W. 333; Coleman v. Kansas City, 353 Mo. 150, 182 S. W. (2d) 74, l. c. 78(14); Bisesi v. Farm & Home Savings & Loan Assn., 231 Mo. App. 897, 78 S. W. (2d) 871, l. c. 874; Allison v. Mo. Power & Light Co. (Mo. App.), 59 S. W. (2d) 771; Magee v. Mercantile-Commerce Bank & Trust Co., 343 Mo. 1022, 124 S. W. (2d) 1121; Cleveland v. Laclede-Christy Clay Products Co. et al. (Mo. App.), 129 S. W. (2d) 12, l. c. 17; Hughes v. Toledo Scale & Cash Register Co., 112 Mo. App. 91, 86 S. W. 895. But whatever may be the ruling in any of these cases indicative of the notion that such an acceleration provision as here is mandatory, is out of line with the general rule.

The judgment should be reversed and the cause remanded with direction to allow the claim. It is so ordered. *Dalton* and *Van Osdol,* CC., concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.