**In re Joan April HALL, Debtor.**

**No. 00–43421–13.**

United States Bankruptcy Court, W.D. Missouri.

Aug. 3, 2001.

*ORDER*

FRANK W. KOGER, Bankruptcy Judge.

Debtor Joan April Hall purchased her residence from her mother, Mary G. Lilleston–Jordon, in the mid–1980s. In connection therewith, the debtor executed a Promissory Note dated October 7, 1985 (the "Note") in the principal amount of $22,049.23, payable in monthly installments of $231.61 and bearing an annual interest rate of 10%. Also on October 7, 1985, the debtor executed a Deed of Trust which was recorded with the Recorder of Deeds in Jackson County, Missouri, on October 11, 1985 (the "Deed of Trust"). An amortization schedule submitted by the debtor's mother indicates that, had the debtor made the payments on the Note as scheduled, it would mature on September 1, 2001.[1] The debtor never made a payment on the Note, however, despite the fact that she has apparently lived in the house since 1985 and still claims the house as her place of residence on her bankruptcy schedules.[2]

At some point in recent years, the debtor's relationship with her mother appears to have become rather contentious and, during the summer of last year, the debtor's mother began foreclosure proceedings on the house, with the foreclosure sale scheduled for August 3, 2000. The county taxing authority had also scheduled an advertised tax sale to be held on September 18, 2000, as a result of unpaid property taxes. On August 3, 2000, the date on which the mother's foreclosure sale was

---

1. The Court will assume, for the sake of argument, that this amortization schedule is correct. Because the accuracy of the schedule makes no difference to the outcome of this case, the Court does not make any finding of fact as to that particular issue.

2. In her brief, the debtor's mother suggests that the debtor has not lived at this residence "in recent memory." However, since no one has objected the debtor's claiming this property as her homestead, this has not been raised as an issue here.

scheduled, the debtor obtained a temporary restraining order to prevent the sale. The debtor also filed a quiet title action in the Jackson County Circuit Court.

On September 18, 2000, the debtor filed her Chapter 13 bankruptcy petition, thereby staying the sale of the residence by the county taxing authority for unpaid real estate taxes. In her bankruptcy schedules, the debtor lists this property as her place of residence and claims an $8,000 homestead exemption in the residence under Mo.Rev.Stat. § 513.475. She lists no rent or home mortgage payment on her Schedule J, but lists expenses for utilities, home maintenance and real estate taxes. On her Schedule D, Creditors Holding Secured Claims, she lists her mother as a creditor, listing the value of the real estate at $50,000 but indicating that the amount of her mother's claim is zero. She has also indicated that this claim is disputed. In her Chapter 13 Plan, the debtor has reflected no payment on the mortgage, either through the plan or otherwise, and she indicates that any mortgage lien held by Mary G. Lilleston–Jordan is to be avoided.

On October 12, 2000, the debtor's mother filed a Proof of Claim, asserting a secured claim in the amount of $55,123.09, all of which is claimed as an arrearage. On December 13, 2000, the debtor filed an Objection to her mother's Proof of Claim, asserting that the claim should be disallowed because (1) the entire amount, including the entire principal amount, was listed as an arrearage, and (2) since the Promissory Note and Deed of Trust had not been collected upon for over ten years, they are invalid. On January 19, 2001, the debtor's mother filed an amended Proof of Claim asserting a secured claim in the amount of $22,049.23 together with interest in the amount of $30,500.84, for a total claim of $52,550.07, all of which is again claimed as an arrearage. She also filed an Application for Order Modifying Automatic Stay, seeking to have the stay lifted so that she can foreclose and sell the property. Specifically, the debtor's mother asserts she will suffer irreparable harm because the debt is past due, because the debtor has not provided proof of insurance, because she is delinquent in paying her real estate taxes, and because the debtor's mother's interest is not adequately protected.

The parties have submitted briefs on the issue of whether the debtor's mother is barred by the statute of limitations from collecting on the Note and foreclosing the Deed of Trust. They agree that the issue of the validity of the debtor's mother's claim is an issue to be determined in accordance with state law, *see Grogan v. Garner,* 498 U.S. 279, 283, 111 S.Ct. 654, 657, 112 L.Ed.2d 755 (1991), but they disagree on the application of the Missouri law to the facts in this case.

Missouri statute provides that "[a]n action upon any writing, whether sealed or unsealed, for the payment of money or property" shall be commenced within ten years. Mo.Rev.Stat. § 516.110. In addition:

> No suit, action or proceeding under power of sale to foreclose any mortgage or deed of trust, to secure any obligation to pay money or property, shall be had or maintained after such obligation has been barred by the statutes of limitation of this state; nor in any event after the lapse of twenty years from the date at which the last maturing obligation secured by the instrument sought to be foreclosed is due on the face of such instrument. . . .

Mo.Rev.Stat. § 516.150.

█ Thus, in Missouri, "[t]he period of limitations on a promissory note is ten years." *Sabine v. Leonard,* 322 S.W.2d

831, 837 (Mo. banc 1959) (*citing* Mo.Rev. Stat. § 516.110); *accord Estell v. Estate of Iden,* 714 S.W.2d 774, 777 (Mo.Ct.App. 1986). "Also, if recovery on a note has been barred by the statute, the right to foreclose a deed of trust securing the same is also barred." *Id.* (*citing* Mo.Rev.Stat. § 516.150; *Oehler v. Philpott,* 263 S.W.2d 201 (Mo.1953)). In other words, a creditor cannot foreclose on a deed of trust if recovery on the promissory note is barred by the statute of limitations, which, pursuant to § 516.110, is ten years.

■ In addition, § 516.100 provides:

Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

Mo.Rev.Stat. § 516.100. And, the Missouri Supreme Court has interpreted this provision as follows:

[B]y the specific term of the amended statute [§ 516.100] the cause of action for breach of an installment contract for the payment of money shall not be deemed to accrue (for purposes of computing the limitation period) until the last item shall become due so that all damages (unpaid installments) may be recovered and complete relief obtained in one action.

*Sabine,* 322 S.W.2d at 837 (*overruling Stark Bros. Co. v. Gooding,* 175 Mo.App. 353, 162 S.W. 333 (1914)).[3] In other words, "the statute does not begin to run on a promissory note until the last installment of the note is due pursuant to § 516.100.... This view is generally accepted." *Estell v. Estate of Iden,* 714 S.W.2d at 777; *see also Reed v. Rope,* 817 S.W.2d 503, 508 (Mo.Ct.App.1991) ("[i]n the case of *Sabine v. Leonard,* ... the supreme court instructed that a party may file suit and recover for all breaches of a contract providing for continued periodic performance which occurred during the contract's term provided that the petition of the injured party is filed within the period of limitation provided by statute after the last breach occurs.").

As a result, pursuant to Missouri statutory and case law, because the final payment on the Promissory Note in the case at bar is not due until September of 2001, the statute of limitations as to the entire obligation under the Note does not begin to run until then.

■ The debtor asserts, however, that pursuant to the acceleration clause contained in the Promissory Note, all payments (including the final one, for purposes of § 516.100) became due when she missed the first payment in December of 1985 and that the ten-year statute of limitations began running at that time. Specifically, the Promissory Note provides that "[i]f default is made in the payment of any installment when due, then all the remaining installments shall become due and payable at once." The debtor asserts that, because of the acceleration clause, the statute began running in December 1985, when the first payment went unpaid,

**3.** In *Stark Bros. Co. v. Gooding,* overruled by *Sabine,* the Court had held that the statute of

limitations began to run on each installment when it became due.

and would have therefore run out in December of 1995.

At first blush, this argument appears to have some merit. Nevertheless, this Court concludes that the debtor is incorrect on this point: the acceleration clause does not change the time at which the statute of limitations on the Promissory Note begins to run in this case *because the debtor's mother never made an affirmative overt act evidencing an intention to invoke the acceleration provision.*

██ The debtor correctly points out that acceleration clauses may contain language indicating either "automatic" acceleration on default (i.e., that the entire amount *shall* become due and payable upon default), or "optional" acceleration on default (i.e., that the seller *may* declare the entire amount due and payable upon default), or a combination of the two. Contrary to the debtor's assertion, however, acceleration clauses are not self-operative in Missouri, even when the acceleration clause language appears to be automatic, as it does in the case at bar.

As the debtor concedes, in *Putthoff v. Walker*, 213 Mo.App. 228, 248 S.W. 619 (1923), the Missouri Court of Appeals expressly held that an acceleration clause identical to the one in the case at bar was not self-executing. *Id.* at 621. The debtor asserts, however, that *Putthoff* was incorrectly decided and she cites several Missouri Supreme Court cases which she contends hold to the contrary.[4]

However, even assuming the cases cited by the debtor stand for the proposition that the debtor contends they do, the Missouri Supreme Court later addressed the issue in *Tower Grove Bank & Trust v.*

*Duing, et al.,* 346 Mo. 896, 144 S.W.2d 69, 70 (1940), and *Casper v. Bell's Estate,* 358 Mo. 995, 218 S.W.2d 606 (1949), and, in this Court's opinion, held to the contrary in those more recent cases.

In the later of the two cases, *Casper,* an extension agreement on a mortgage note provided that "default for thirty days in any obligation pertaining to either mortgage resting upon [the purchaser] will mature all obligations thereof." *Casper,* 218 S.W.2d at 607. One of the express issues in *Casper* was whether this acceleration provision was "optional." Relying directly on Court of Appeals' decision in *Putthoff v. Walker,* discussed above, and its own previous decision *Tower Grove Bank* (holding that an acceleration provision in a deed of trust securing a note which provided that "failure to pay any interest note when due would cause the whole sum to become due" was optional), the Missouri Supreme Court held that the acceleration provision in *Casper was optional.* According to the Supreme Court:

> Instruments payable at fixed times frequently provide that if an installment of interest or principal is not paid when due, the holder of the instrument *may* declare the whole debt due. This option of the holder to declare the whole debt due must be exercised within a reasonable time.... There is more difficulty with instruments which merely provide that any delinquency or default in the payment of any interest *shall* cause the whole instrument immediately to become due and collectible. The cases are not agreed as to whether such an instrument becomes due absolutely, or merely at the option of the holder. Some cases hold that the default effects an automat-

---

4. *See Graves v. Davidson,* 334 Mo. 882, 68 S.W.2d 711 (1933), *Board of Trustees of Westminster College v. Piersol,* 161 Mo. 270, 61 S.W. 811 (1901), *Rumsey v. People's Railway*

*Co.,* 154 Mo. 215, 55 S.W. 615 (1899), and *Owings v. Mackenzie,* 133 Mo. 323, 33 S.W. 802 (1896).

ic acceleration, while *most courts seem to take the better view that the acceleration in such case is optional with the holder.*

*Casper v. Bell's Estate,* 218 S.W.2d at 608–09 (*quoting* 8 Am.Jur., Bills and Notes, § 286) (emphasis added).

Although the debtor attempts to distinguish *Casper* and to point out certain flaws in the authority relied upon by the Court in *Casper,* the bottom line is that the Missouri Supreme Court has held in its more recent decisions that instruments containing what appear to be automatic acceleration clauses are not self-executing and are, rather, optional. In fact, in *Casper,* after listing several cases cited by the defendant for the proposition that the acceleration clause in that case was not optional, the Missouri Supreme Court said, "But whatever may be the ruling in any of these cases indicative of the notion that such an acceleration provision as here is mandatory, it is out of line with the general rule." *Id.* at 609.

It is also worthy of mention that although the Missouri Supreme Court did not expressly address the acceleration issue in *Sabine v. Leonard,* discussed above, the promissory note in that case contained an acceleration clause which provided that "[i]f default is made in the payment of any installment when due, then all the remaining installments shall become due and payable at once." *Sabine v. Leonard,* 322 S.W.2d at 839 (Coil, dissenting). In that case, if the last payment had been made according to schedule, the last payment would have been made on May 1, 1938. *Id.* at 837. The last payment actually made on the note, however, was made on October 3, 1925. *Id.* at 833. The foreclosure proceeding was filed March 27, 1948. *Id.* at 837. As discussed above, the majority of the Supreme Court en banc held in that case that the statute of limitations had

not run on any portion of the debt, even though it clearly would have run had the acceleration clause made a difference. Again, the actual issue in *Sabine* was the application of §§ 516.110, 516.110 and 516.150 and the specific holding there was that the statute begins to run ten years from the date the last payment was due pursuant to § 516.100. Nevertheless, even though the Supreme Court did not address the effect of the acceleration clause (the issue probably was not raised by the parties), certainly the Court would have mentioned it had it made a difference to the holding. It did not.

Furthermore, the Missouri Court of Appeals addressed this issue again in *Spires v. Lawless,* 493 S.W.2d 65 (Mo.Ct.App. 1973), and again held that even "automatic" acceleration clauses are optional. In that case, the Missouri Court of Appeals was faced with a situation where the acceleration clause contained in the promissory note provided that default in the payment of any monthly installment shall render the whole mortgage debt due "at the election of the payees or their assigns," whereas the deed of trust, which by its terms incorporated the note, provided that, upon breach of any condition, including failure to pay the note, then the note "shall become due for all purposes, and payable pro rata." *Id.* at 73. Thus, according to the Court, the acceleration provision in the note was "optional" while the acceleration clause in the deed of trust was "automatic." Nevertheless, the Court expressly held that "that discrepancy creates no significant ambiguity in this case." *Id.*

The mortgagors' failure to pay the October 1969 installment did not automatically mature the whole debt, *Capital City Motors, Inc. v. Thomas W. Garland, Inc.,* [363 S.W.2d 575, 578 (Mo.1962) ]; *Wolfley v. Wooten,* [220 Mo.App. 668, 293 S.W. 73, 75 (Mo.Ct.App.1927) ], be-

cause *whether we regard the governing acceleration provision as "automatic" or "optional" it was not, in this jurisdiction, self-operative, but merely conferred upon the mortgagees an option to treat the entire mortgage debt as due.* [FN5: *Tower Grove Bank & Trust Co. v. Duing,* 346 Mo. 896, 901–902, 144 S.W.2d 69, 71 (1940), 153 A.L.R. 1325, 1329; *Putthoff v. Walker,* 213 Mo.App. 228, 232–233, 248 S.W. 619, 620–621 (1923); Annot., 159 A.L.R. 1077, 1084–1087, IIc (1945); *see also* Chafee, *Acceleration Provisions in Time Paper,* 32 Harv.L.Rev. 747, 767 (1919).] In order to effectuate the acceleration and render the entire debt due, the mortgagee must perform some affirmative, overt act evidencing his intention to take advantage of the accelerating provision.

*Id.* (emphasis added).

Finally, in a fairly recent case, the Eighth Circuit Court of Appeals has said on this issue:

> Missouri law provides that acceleration clauses are not "self-operative." *Spires v. Lawless,* 493 S.W.2d 65, 73 (Mo.Ct. App.1973). Rather, acceleration clauses confer upon the holder an option to treat the entire debt as due upon default. *See id.* "In order to effectuate the acceleration and render the entire debt due, the [holder] must perform some affirmative, overt act evidencing [its] intention to take advantage of the acceleration provision." *Id.* The Missouri Supreme Court has held that "[t]he filing of [a claim] seeking full payment is wholly sufficient as notice of acceleration." *Audsley v. Allen,* 774 S.W.2d 142, 145 (Mo.1989).

*First Bank of Marietta v. Hogge,* 161 F.3d 506, 510 (8th Cir.1998). Because the Eighth Circuit did not set out the language of the acceleration clause in *Hogge,* nor did it mention whether it was of the "automat-

ic" or "optional" type, one can assume that the distinction makes no difference. Rather, the Eighth Circuit appears to consider the simple rule in Missouri to be that "acceleration clauses are not 'self-operative.'" *Id.; see also First Bank Investors' Trust v. Tarkio College,* 129 F.3d 471, 475 (8th Cir.1997)

■ While this Court understands the debtor's point as to the distinction between automatic and optional acceleration clauses, this Court concludes that the Missouri courts simply do not distinguish between them on the issue of whether they are self-executing: in either case, the creditor must do something in order to effectuate the acceleration. And, this Court considers the Missouri courts' treatment of acceleration clauses in this manner to be sensible. In effect, the debtor here is arguing that an "automatic" acceleration clause should be "mandatory." But the courts have determined, and this Court believes rightly so, that a creditor can waive its right to accelerate, even when the language of the acceleration clause appears to make the acceleration "automatic." In fact, in most cases, a debtor who has defaulted on an obligation in a promissory note or other debt instrument usually *wants* the creditor to waive an acceleration clause, even when it is automatic, and, in many cases, the creditors do just that.

In sum, the Court concludes that in order to accelerate the Note in this case, the debtor's mother was required to make some affirmative act to do so—it did not happen automatically when the debtor missed the first payment back in 1985. Arguably, the filing of the foreclosure action in the summer of last year constituted an affirmative act sufficient to accelerate the debt, but the statute of limitations has certainly not run out in that event.

As a result, the Court hereby overrules the debtor's objection to the claim of Mary

G. Lilleston–Jordon. Furthermore, under the circumstances of this case, particularly the amount of arrearage and the non-payment of real estate taxes, the Court concludes the stay should be lifted pursuant to 11 U.S.C. § 362(d) so that Ms. Lilleston–Jordan can proceed with foreclosure in the state court.