

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **MARY M. HARMS,** | **WD78643** |
| **Respondent,** | **OPINION FILED:** |
| **v.** | **MAY 24, 2016** |
| **GREGORY R. HARMS,** | |
| **Appellant.** | |

**Appeal from the Circuit Court of Benton County, Missouri**
**The Honorable Michael O'Brien Hendrickson, Judge**

**Before Division Three: Gary D. Witt, P.J., James E. Welsh, Anthony Rex Gabbert, JJ.**

Gregory R. Harms appeals the circuit court's judgment in favor of Mary M. Harms on her petition to recover debts owed to her by Gregory.[1] Gregory asserts three points on appeal. First, he contends that the circuit court erred in rejecting his statute of limitations defense regarding the $45,000 promissory note because Section 516.110[2] requires a civil action to be commenced within ten years upon any writing and the cause of action accrued upon Gregory's default on the promissory note on or about June 21, 2002, and suit was not instituted within ten years of that date. Second, Gregory contends that the circuit court erred in rejecting his statute of limitations

---

[1]Because the parties share the same last name, we refer to them by their first names. No disrespect is intended.

[2]All statutory citations are to the Revised Statutes of Missouri 2000, unless otherwise noted.

defense regarding his promise to pay $15,000 in Count II of Mary's petition because Section 516.120 requires a civil action to be commenced within five years on any contract, except those mentioned in Section 516.110, and the cause of action here accrued on or before November 30, 2001, and suit was not instituted within five years of that date. Third, Gregory contends that the circuit court erred in finding that the debt owed to Mary had been reaffirmed in 2011, 2012, and 2013, because Section 516.320 requires that no acknowledgment or promise can take a contract out of the operation of the provisions of sections 516.100 to 516.370 unless the same is in a writing subscribed to by a party chargeable thereby, and no writing was subscribed to by Gregory to extend the statute of limitations on the debts and any promise, acknowledgement, or reaffirmation thereof is void. We affirm.

The evidence is uncontested. In 1999 or 2000, Mary loaned her son, Gregory, $5,000. In 2001, Mary loaned Gregory another $8,000 and $2,000 respectively. Gregory acknowledged these loans at trial and that they had never been repaid. On January 15, 2002, Mary sold Gregory a house for $45,000. At that time, Mary obtained a promissory note from Gregory wherein he agreed to pay the $45,000 back in monthly installments over a span of ten years at a 5% annual interest rate. The promissory note also provided that Gregory would be obligated to Mary for attorney fees and expenses related to collecting on the note. Also at that time, Gregory prepared an amortization schedule that consolidated the $45,000 loan with the $15,000 in prior loans. Gregory testified at trial that all of the debt was to be "rolled under one deal" and that the total obligation for that one deal would be $60,000. Mary testified that she agreed to this arrangement and although the amortization schedule called for a 5.25% interest rate, she told Gregory that 5% was sufficient.

2

After entering the January 15, 2002 agreements, Gregory made only two payments to Mary. These payments totaled approximately $1,000. His last payment was on June 21, 2002. Gregory testified that, although he took a mortgage out on the home he purchased from Mary approximately seven months after acquiring it, he gave her none of the proceeds.[3] Over the years Mary and Gregory discussed repayment of the loans. Gregory testified at trial that, in 2011, he promised to pay Mary upon the sale of a farm that he had inherited from his father. He testified that, after the farm sold, however, he did not repay Mary.

On April 23, 2013, Mary filed a petition alleging that Gregory had defaulted on the $45,000 promissory note and that Gregory had defaulted on the $15,000 personal loans under the terms of the amortization schedule agreement. She filed a four-count First Amended Petition on November 6, 2013. The First Amended Petition alleged in Count I that Gregory had defaulted on the $45,000 promissory note, in Count II that he had defaulted on the $15,000 personal loans under the amortization schedule agreement, in Count III that Gregory promised to pay Mary all of the debt due when his father's farm sold and in reliance on those representations Mary did not pursue enforcement of the note, and in Count IV that Gregory had defaulted on the terms of the written amortization schedule to pay Mary a total of $60,000 for all of the debt. Gregory's answer to this First Amended Petition, among other things, asserted that Mary's claims were barred by all applicable statutes of limitations.

After hearing evidence, the circuit court ruled in favor of Mary and found Gregory indebted to Mary in the sum of $75,831.90 on the $45,000 promissory note, including interest,

---

[3]Mary testified that, in June of 2002, she released a deed of trust that she had filed in connection with the promissory note because she was about to undergo heart surgery and did not want Gregory to have to worry about having a lien on the property if she did not survive the surgery. All parties acknowledged that, in spite of this release, the loan was never forgiven.

and $24,891.78 on the $15,000 in personal loans, including interest. The court ordered Gregory to pay $10,000 for attorney fees and costs of collection on the promissory note. Gregory appeals.

Our standard of review is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Schollmeyer v. Schollmeyer*, 393 S.W.3d 120, 122 (Mo. App. 2013). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 122-123. We view the evidence and all reasonable inferences in the light most favorable to the court's judgment. *Id.* at 123. We will affirm the judgment if it is correct under any reasonable theory supported by the evidence. *Williams v. State, Dept. of Social Services, Children's Div.*, 440 S.W.3d 425, 427 (Mo. banc 2014). "Whether a statute of limitations applies to a given cause of action is [] reviewed *de novo*." *Davison v. Dairy Farmers of America, Inc.*, 449 S.W. 3d 81, 83 (Mo. App. 2014).

In his first point on appeal, Gregory contends that the circuit court erred in rejecting his statute of limitations defense regarding the $45,000 promissory note because Section 516.110 requires a civil action to be commenced within ten years upon any writing and the cause of action accrued upon Gregory's default on the promissory note on or about June 21, 2002, and suit was not instituted within ten years of that date. We disagree as we find that the cause of

action accrued January 1, 2012, and, therefore, Mary's claim was timely filed.[4]

Gregory argues that *Hemar Ins. Corp. of America v. Ryerson*, 108 S.W.3d 90 (Mo. App. 2003), is dispositive of this case because it holds that a cause of action on a promissory note accrues when the borrower first defaults on the note thereby giving the lender the right to accelerate the payments and bring a successful suit on the note. Gregory contends that, because his last payment was made on June 21, 2002, the cause of action accrued at that time and, because Mary did not file suit until April 23, 2013, ten years had passed and the statute of limitations barred her claim.

We disagree that *Hemar Ins. Corp. of America v. Ryerson* (*Hemar I*) stands for this proposition as this interpretation was refuted in *Ryerson v. Hemar Ins. Corp. of America*, 200 S.W.3d 170 (Mo. App. 2006) (*Hemar II*). In *Hemar II*, our Eastern District explained that in *Hemar I* it had found that the case involved a promissory note, not a demand note, and the trial court had incorrectly ruled that the cause of action accrued either on the date the first payment of the promissory note was due or the date the note was signed. *Ryerson*, 200 S.W.3d at 171. Upon remand, the trial court granted the creditor's (an assignee in that case) motion for summary judgment and assessed damages against the debtor for the principal amount of the loan, pre-judgment interest, and attorney fees. *Id.* at 172. The debtor appealed arguing that the trial court

---

[4]As a preliminary matter, Mary argues that Gregory waived his statute of limitation defenses by failing to plead the specific statutes upon which he relied, failing to plead sufficient facts to support his defenses, and by failing to plead that the statute of limitations operated to extinguish the cause of action itself and not merely bar the remedy. We find it is unnecessary to examine the sufficiency of Gregory's pleadings as the record reflects that, even if deficiently pled, the statute of limitations defenses were tried by consent. Prior to trial, Gregory filed a Motion for Summary Judgment alleging no genuine issue of material fact in dispute and entitlement to judgment as a matter of law for the reason that, prior to Mary filing her petition, ten years had passed since Gregory last made a payment to Mary on the loans. In "Plaintiff's Legal Memorandum in Opposition to Defendant's Motion for Summary Judgment" Mary directly addressed Gregory's specific statute of limitation defenses and did not assert that Gregory had failed to properly plead those defenses. Mary first contended that Gregory failed to adequately plead the statute of limitations after Gregory moved for a directed verdict at trial. Rule 55.33(b).

erred in granting summary judgment because a genuine issue of material fact remained with regard to when the statute of limitations began to run. *Id.* The Eastern District disagreed explaining that our Supreme Court's interpretation of Section 516.100 in relation to an installment note was

> 'that in suits upon contracts where there is more than one item of damage (installment) the cause of action shall not be deemed to accrue until the last item of damage is sustained (last installment becomes due) so that all damages (installments) may be recovered, and full and complete relief obtained in one action....'

*Id.* at 173 (quoting *Sabine v. O.W. Leonard*, 322 S.W.2d 831, 838 (Mo. 1959)). It noted that "[i]n *Hemar I,* this Court rejected the assertion that the date of Borrower's first installment payment delinquency was the date that the statute of limitations commenced." *Id.* at 172. *Hemar II* concluded: "We find the date that the statute of limitations commences to run on an installment note is the date the last installment of the note is due." *Id.*

Here, the promissory note Gregory signed was an installment note providing that he would make monthly payments on the first day of each month beginning February 1, 2002 until the note was paid in full. The note further provides that "[i]f, on January 1, 2012 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the 'maturity date.'" Although the parties disagree as to whether the note gave Mary the right to accelerate the entire note upon default of monthly payments, it is clear that Mary never exercised any rights she may have had to accelerate. She did not file suit until after the note's maturity

6

date of January 1, 2012.[5] Therefore, pursuant to Section 516.110, Mary had ten years from January 1, 2012 to pursue collection on the note. Consequently, Mary's claim associated with the $45,000 promissory note, filed April 23, 2013, was timely and the circuit court did not err in rejecting Gregory's statute of limitations defense regarding that note. Point one is denied.

In his second point on appeal, Gregory contends that the circuit court erred in rejecting his statute of limitations defense regarding his promise to pay $15,000 in Count II of Mary's petition because Section 516.120 requires a civil action to be commenced within five years on any contract, except those mentioned in Section 516.110, and the cause of action here accrued on or before November 30, 2001, and suit was not instituted within five years of that date. We find that Mary's claim was timely filed.

It is undisputed that Mary gave Gregory three loans between 1999 and November 30, 2001, and that the total amount of those loans was $15,000. At time the loans were given, there were no set terms with regard to repayment. Mary testified at trial that there was no interest attached to the loans and that Gregory was to pay her back as soon as he could. On January 15, 2002, approximately a month and a half after the last of the three loans, an agreement was reached with regard to exact terms for repayment of all three loans. Mary and Gregory agreed to consolidate the three loans pursuant to an amortization schedule created by Gregory. The amortization schedule provided that repayment of the loans would be spread over fourteen years

---

[5] If Mary had the option and had chosen to accelerate the note and demand payment of the entire note in full prior to the maturity date, the cause of action would have accrued at the time she accelerated the note because acceleration causes the last installment payment to be due and owing. *Ryerson*, 200 S.W.3d at 173. Gregory contended in oral argument that, where an acceleration provision exists, the cause of action must accrue upon default. We disagree as this is only true where the acceleration provision is mandatory. *See Casper v. Bell's Estate*, 218 S.W.2d 606, 607 (Mo. 1949). Here, the acceleration provision is clearly not mandatory as it states that, upon default "the Note Holder *may* require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on the account." (Emphasis added).

7

and Mary was to receive interest on the unpaid principal balance throughout that period.[6]

Although neither party signed the printed amortization schedule, both Gregory and Mary agreed at trial that, starting January 15, 2002, the amortization schedule was to govern repayment of the $15,000 in loans.[7] Gregory made no payments on any of the loans until after the amortization schedule agreement became effective.[8]

On appeal, Gregory ignores the amortization schedule agreement and argues that the original three loans totaling $15,000 were "demand notes" that render Mary's claims for repayment barred by Section 516.120, or any other applicable statute of limitations, because the cause of action accrued when the money was loaned. Gregory asserts that, because the final loan was made November 30, 2001, the cause of action for each loan accrued on or prior to that date and, because Mary did not file her claims until April 23, 2013, her claims were filed well beyond Section 516.120's five-year statute of limitations. We disagree and find that, even if the original discussions regarding the $15,000 in loans resulted in three payable on demand obligations, any agreements accompanying those obligations were extinguished by the January 15, 2002,

---

[6]Although the amortization schedule states that interest was to be at 5.25%, Mary testified at trial that she told Gregory that 5% interest was sufficient. The trial court calculated interest on all claims at 5%.

[7]The parties testified that the amortization schedule agreement also included the $45,000 Gregory agreed to pay Mary for purchase of the home.

[8]We note that the trial court calculated the interest for the unpaid balance of the $15,000 in loans based on the January 15, 2001 amortization agreement and not the original date of each loan.

amortization schedule agreement.[9]  "Upon the execution of a valid and legal substituted

agreement, the original agreement merges into it and is extinguished, and failure to perform the

substituted agreement will not revive the old agreement."  *Boyd v. Lane*, 869 S.W.2d 305, 309

(Mo. App. 1994) (internal quotation marks and citation omitted).  "A party who repudiates the

contract cannot at the same time set it up as a defense to a liability which he otherwise would

---

[9]Gregory argues in his reply brief that the amortization schedule did not constitute a new promise to pay as there was no new consideration given but, if it did, then the $45,000 promissory note would then be extinguished, along with his obligation to pay attorney fees under that promissory note, because the $45,000 was included in the amortization schedule.  We disagree.  Here, the trial court found the $45,000 due under the promissory note and the $15,000 due under the amortization schedule agreement.  These distinctions are supported by the record as the promissory note and the amortization schedule agreement were ratified nearly simultaneously and, therefore, it cannot be said that the oral amortization agreement modified or discharged the written promissory note.  The amortization agreement was orally discussed and agreed upon but not signed by any party.  The promissory note was an unambiguous contract signed by all parties and any oral modification of that contract would be barred by the parole evidence rule.  *Waymire Co. v. Antares Corp.*, 975 S.W.2d 243, 247 (Mo. App. 1998).

> The parole evidence rule prohibits use of oral evidence to contradict or change the terms of a written, unambiguous and complete contract absent fraud, common mistake, accident or erroneous omission.  The rule prohibits evidence of contrary agreements made prior to or contemporaneously with the writing but does not prohibit evidence of agreements entered subsequent to the contract. It is presumed that a written contract embodies the entire agreement of the parties, and this is particularly so where it is a promissory note which is in dispute.

*Pacific Carlton Development Corp. v. Barber*, 95 S.W.3d 159, 165 (Mo. App. 2003) (internal quotation marks and citations omitted).  The parole evidence rule does not apply, however, to the $15,000 in loans as the amortization schedule agreement represented a new or modified oral contract regarding those loans. (Mary testified at trial that Gregory presented the amortization schedule to her in January.  Gregory argued orally that the amortization schedule was agreed upon in December because the schedule contains "12/19/01 4:36 AM" in the lower, right hand corner. Mary pointed out at trial that the upper, right hand corner contains the date "2002" and the start date listed on the schedule is "Jan 2002."  Because Gregory has never argued that the amortization schedule was agreed upon after he signed the promissory note, these variances are insignificant to this analysis.)

9

incur." *Id.*[10]  Our Supreme Court stated in *Berry v. Crouse*, 376 S.W. 2d 107 (Mo. 1964):

> It is now perfectly clear that informal contracts, whether written or oral, can be modified and discharged by a subsequent agreement, whether written or oral.… [A]fter these issues have been determined and the court finds, as a fact, the making and the terms of the modifying or discharging agreement, we are no longer interested in the terms of the antecedent contract for purposes of enforcement of them, in so far as those terms have been nullified by the new agreement.

*Id.* at 112 (internal quotation marks and citation omitted).  "When the parties modify an existing contract they are making a new contract; it is only enforceable if there is mutual assent and consideration."  *Best Buy Builders, Inc. v. Siegel*, 409 S.W.3d 562, 565 (Mo. App. 2013) (internal quotation marks and citation omitted).

The trial court found that Gregory himself created the amortization schedule and the record supports this conclusion.  All parties agree that the $15,000 in loans were to be repaid according to the terms of that amortization schedule.  Assuming, *arguendo*, that the original loans were payable on demand and this amortization schedule was a "new" agreement, consideration for this "new" agreement can be found in its terms; full payment was deferred over a period of fourteen years in exchange for 5% yearly interest on the principal balance.  This agreement was an installment contract and, like the promissory note discussed above in Point one, the statute of limitations did not begin to run until the last installment was due under the contract.  According to the amortization schedule, the last installment was due December, 2015.

---

[10]Section 516.320 states that, in actions founded on any contract, no oral acknowledgement or promise thereafter made shall be evidence of a new or continuing contract that might remove any case from the statutes of limitations set forth in Section 516.100 to 516.370.  Here, the amortization schedule agreement was not a mere acknowledgment of an existing contract and promise to repay; if not the initial contract, it was an entirely new contract, complete with new consideration, which nullified any prior agreements.  This new agreement was made prior to the expiration of any potentially applicable statute of limitations set forth in Section 516.100 to 516.370.  Although Gregory raises a statute of frauds defense in Point three with regard to the trial court's finding that reaffirmations and new promises were made in 2011, 2012, and 2013 regarding the debt, Gregory has never contended that the statute of frauds barred enforcement of the amortization schedule agreement.

Mary filed her claim on April 23, 2013, prior to the due date of the final installment. As her claim was filed prior to the expiration of any possible applicable statute of limitations, the circuit court did not err in rejecting Gregory's statute of limitations defense regarding his promise to pay $15,000 in Count II of Mary's petition.[11]  Point two is denied.

In his third point on appeal, Gregory contends that the circuit court erred in finding that the debt owed to Mary was reaffirmed in 2011, 2012, and 2013, because Section 516.320 requires that no acknowledgment or promise can take a contract out of the operation of the provisions of sections 516.100 to 516.370 unless same is in a writing subscribed to by a party chargeable thereby, and no writing was subscribed to by Gregory to extend the statute of limitations on the debts and any promise, acknowledgement, or reaffirmation thereof is void.

Given our dispositions in Points one and two above, we need not decide this issue because, even if the court found that the debt was reaffirmed and erred in doing so, this would not change the fact that Mary's claims were otherwise timely filed.

We conclude that the circuit court did not err in rejecting Gregory's statute of limitations defense regarding the $45,000 promissory note as the statute of limitations began running on January 1, 2012, the maturity date of the installment note, and Mary filed her claim within ten years after that date.   Further, we find that the circuit court did not err in rejecting Gregory's statute of limitations defense regarding his promise to pay $15,000 in Count II of Mary's petition because Mary's claim was filed prior to the expiration of the statute of limitations set forth in

---

[11]Although there is no evidence in the record that the amortization schedule or agreement based on that schedule included an acceleration provision, Gregory did not object to Mary's petition for payment of the $15,000 on the grounds that her claim was prematurely filed. Any such claim now would be moot as the final installment date of December, 2015 has now passed. Had there been an acceleration clause, Mary's filing would have triggered the running of the statute of limitations. *See Ryerson*, 200 S.W.3d at 173.

Section 516.120.  We affirm the circuit court's judgment.


_____
Anthony Rex Gabbert, Judge


All concur.